The State, *ex rel.* Corwin, *v.* The Indiana and Ohio Oil, Gas, and Mining Co.

No. 14,928.

## THE STATE, EX REL. CORWIN, *v.* THE INDIANA ANP OHIO OIL, GAS; AND MINING COMPANY.

NATURAL GAS.—*Transportation of.*—*Interstate Commerce.*—*Constitutional and Unconstitutional Provisions.*—*Interblending of.*—The act of March 9th, 1889, Acts of 1889, p. 369, has for its object to prevent persons from conveying natural gas from this state into another state, with the imposition of penalties for so doing, and is unconstitutional, being legislation in reference to interstate commerce. The provision of the act as to the sinking of wells, is so bound up with the provisions designed to effect the principal object that separation can not be made, without completely destroying the statute, and substituting another for it by judicial construction.

SAME.—*Commercial Commodity.*—*When it Becomes.*—Natural gas in the earth may not be a commercial commodity, but when brought to the surface and placed in pipes for transportation, it assumes that character as completely as coal on the cars, or petroleum in the tanks.

CONSTITUTIONAL LAW.—*Interstate Commerce.*—*Commercial Commodities.*—*Transportation of Between States.*—Transportation of commercial commodities from state to state is interstate commerce, and the state legislature can neither burden nor réstrict it.

SAME.—*Foreign Corporations.*—*Legislative Power over.*—*Limit of.*—While the legislature may regulate or restrict the business of foreign corporations within the state, it can not do so where it operates upon interstate commerce.

SAME.—*Rights of Property.*—*Legislative Control of.*—It is not in the power of the legislature to prevent one person from buying, or another from selling property. The rights of property are not subject to such absolute legislative control. This is the general rule, and it applies to such property as natural gas, petroleum, and coal.

SAME.—*Police Power.*—*Exercise of by the State.*—The states may, so long as they do no more than legitimately exercise the police power, legislate upon matters connected with interstate commerce. The act under consideration, however, can not be deemed a legitimate exercise of the police power of the state. It does not assume to provide for the safety, health, or comfort of the citizens of the state.

SAME.—*Provisions of a Statute.*—*Separation of.*—*When can not be Made.*—When the provisions of a statute are so closely blended that a separation can

not be effected without substituting another law for that intended to be enacted, none can be made by the courts.

From the Jay Circuit Court.

L. T. Michener, Attorney General, J. M. Smith, W. E. Niblack, J. C. Nelson, Q. A. Myers, L. Walker, J. R. Coffroth and C. B. Stuart, for appellant .

J. B. Cohrs, R. C. Bell and S. R. Morris, for appellee.

ELLIOTT, C. J.—At the last session of the General Assembly several acts were passed upon the subject of mining, using, and disposing of natural gas. The validity of one of these, acts, that of March 9th, 1889, is assailed, upon the ground that it contravenes the provisions of the Federal Constitution. The first section of the act, which is here the direct subject of controversy, reads thus :

" SECTION 1. *Be it enacted by the General Assembly of the State of Indiana,* That it shall be unlawful for any person or persons, company, corporation, or voluntary association to pipe or conduct natural gas from any point within this State to any point or place without this State ; any person or persons, company, corporation, or voluntary association, now or hereafter incorporated under any law of this or any other State, for the purpose of drilling and mining for petroleum or natural gas, or otherwise acquiring gas or petroleum wells and the products thereof, and to furnish the same to its patrons, or to convert such product into gas for illuminating purposes or fuel, which shall have entered upon and acquired by deed of conveyance or appropriated or condemned any real estate under any law of this State, for the purpose of laying its pipe lines or for any other purpose, which shall permit any gas to be conveyed or carried through its pipes to any place without this State, or for the purpose of being used without this State, shall forfeit all right, title and interest in and to all such real estate so appropriated, conveyed or condemned, and the pipes laid thereunder, and the same shall revert to and become the property of the persons or corpora-

tion, their heirs, successors or assigns, who owned the same at the time of such appropriation, conveyance or condemnation : *Provided,* That the provisions of this act shall not be so construed as to prevent towns or cities divided by any of the boundary lines of the State, and having a majority of the population of such cities or towns residing within this State, from being supplied with natural gas." Elliott's Suppl., section 1785.

On the 23d of February, 1889, an act was passed declaring that the word " mining " shall be deemed to include the sinking of gas wells, and that the incorporation of companies and the subscription of stock under former laws are legalized. Acts of 1889, p. 38. On the 21st day of February, 1883, an act was passed authorizing gas companies to extend their pipes beyond the corporate limits of towns and cities. Acts of 1883, p. 17. On the 20th day of February, 1889, the General Assembly passed an act authorizing natural gas companies to appropriate and condemn property. Acts of 1889, p. 22. Elliott's Suppl., sections 1009, 1014, 1016. All of these acts were put in immediate effect by the proper emergency clause.

The appellee's counsel contend that the act of March 9th, 1889, is invalid, because it is interstate commerce legislation, and such legislation must be exclusively Federal.

In order to give any force to this contention it is necessary to determine, at the outset, whether natural gas can be considered an article of commerce. With this preliminary question we have but little difficulty. Natural gas is as much an article of commerce as iron ore, coal, petroleum, or any other of the like products of the earth. It is a commodity which may be transported, and it is an article which may be bought and sold in the markets of the country. *Citizens', etc., Co.* v. *Town of Elwood,* 114 Ind. 332; *Carother's Appeal,* 118 Pa. St. 468 ; *Columbia Conduit Co.* v. *Commonwealth,* 90 Pa. St. 307 ; *West Virginia, etc., Co.* v. *Volcanic Co.,* 5 West Va. 382; *The*

The State, ex rel. Corwin, v. The Indiana and Ohio Oil, Gas, and Mining Co.

*Daniel Ball*, 10 Wall, 557; *Kidd* v. *Pearson*, 128 U. S. 1.

The gas in the earth may not be a commercial commodity, but, when brought to the surface and placed in pipes for transportation, it must assume that character as completely as coal on the cars or petroleum in the tanks. We suppose it clear that Pennsylvania could not prohibit the transportation of coal or petroleum to another state, and there is no difference in principle between cases where coal is the commodity affected and those in which it is natural gas. It is no doubt true that there is a point at which a natural or manufactured product is not an article of commerce, but, when it assumes such a form as fits it for transportation from state to state, it is, so far as the law of interstate commerce is concerned, transformed into a commercial commodity. For the purposes of taxation an article of property may not be regarded as a commercial commodity until it has started on its way from one state to another, but property that may become an article of commerce can not be kept in the state where it was produced by a state law forbidding its transportation. *Coe* v. *Errol*, 116 U. S. 517. If this were not so, then, not only might coal and petroleum be kept within the state in which they were produced, but so might corn and wheat, cotton and fruit, and lead and iron. If such laws could be enacted and enforced, a complete annihilation of interstate commerce might result, and it was to prevent the possibility of such a result that the provision vesting exclusive power in the Federal government was written in the National Constitution. *State, ex rel.,* v. *Woodruff Sleeping Coach Co.,* 114 Ind. 155.

The question as to the extent of the power of the State to control the business of mining is not necessarily involved in this controversy. Granting, but not asserting, that procuring natural gas from the earth is mining, still the question of the power of the State over that business is not so involved as to require our judgment upon it. The provisions of the statute are so firmly interlocked that separation is impossi-

ble. Where the provisions of a statute are so closely blended that a separation can not be effected without substituting another law for that intended to be enacted, none can be made by the courts. *Griffin* v. *State, ex rel.*, 119 Ind. 520. To authorize the courts to reject part and sustain part of a statute "the parts must be capable of separation, so that each may be read by itself;" limitation, by construction, is not separation. *Baldwin* v. *Franks*, 120 U. S. 678; Virginia Coupon Cases, 114 U. S. 269; Trade-Mark Cases, 100 U. S. 82; *United States* v. *Reese*, 92 U. S. 214. In this instance there is no attempt to regulate the business of mining except in so far as that business may be connected with transporting natural gas out of the state. The principal object—and, indeed, it is not too much to say, the sole object of the statute—is to prevent persons from conveying gas into another state, and the provisions of the act as to the sinking of wells is so bound up with the provisions designed to effect the principal object that separation can not be made without completely destroying the statute and substituting another for it by judicial construction.

The power to regulate commerce between the states is exclusively in the Federal Congress. Inaction by Congress will not authorize the States to legislate in matters of interstate commerce. Whatever doubt the earlier decisions may have created—and certainly there was, for a time, much confusion and conflict—it is completely removed by the recent decisions, and the law now is, that all legislation in regulation of commerce between the states must be enacted by the national legislature.

Transportation of commercial commodities from state to state is interstate commerce, and the state legislatures can neither burden nor restrict it. *Henderson* v. *Mayor*, 92 U. S. 259; *Chy Lung* v. *Freeman*, 92 U. S. 275; *Railroad Co.* v. *Husen*, 95 U. S. 465; *Robbins* v. *Shelby Co. Taxing District*, 120 U. S. 489; *Corson* v. *Maryland*, 120 U. S. 502; *Western*,

The State, *ex rel.* Corwin, *v.* The Indiana and Ohio Oil, Gas, and Mining Co.

*Union Tel. Co.*v. *Massachusetts,* 125 U. S. 530 ; *State, ex rel.,* v. *Woodruff Sleeping Coach Co., supra.*

The power of the Federal Congress over all matters of interstate commerce, broad as the modern decisions declare it to be, does not absolutely exclude state legislation touching commerce between the states. Police power not delegated to the general government resides in the states as an inherent attribute of sovereignty. *U. S.* v. *De Witt,* 9 Wall. 41 ; Slaughter-House Cases, 16 Wall. 36 ; *U. S.* v. *Reese, supra; Sherlock* v. *Alling,* 93 U. S. 99 ; *Patterson* v. *Kentucky,* 97 U. S. 501 ; Civil Rights Cases, 109 U. S. 3 ; *Smith* v. *Alabama,* 124 U. S. 465 ; *Nashville, etc., R. W. Co.* v. *Alabama,* 128 U. S. 96.

The states may, so long as they do no more than legitimately exercise the police power, legislate upon matters connected with interstate commerce. *Sherlock* v. *Alling, supra; County of Mobile* v. *Kimball,* 102 U. S. 691 ; *Smith* v. *Alabama, supra ; Nashville, etc., R. W. Co.* v. *Alabama, supra.*

It is almost impossible, however, in view of the conflicting and confused state of the law as declared by the Federal Supreme Court, to determine what that tribunal, with which rests the ultimate decision of the question, will eventually regard as a legitimate exercise of the police power by the states, since the doctrine declared in the case of *Western Union Tel. Co.* v. *Pendleton,* 122 U. S. 347, is much more restrictive of the rights of the states than that asserted in *Smith* v. *Alabama, supra ; Nashville, etc., R. W. Co.* v. *Alabama, supra ; Munn* v. *State,* 94 U. S. 113, and many earlier cases. But it is evident that the act under examination can not, under the rule laid down by the court of last resort, be deemed a legitimate exercise of the police power. The act does not assume to provide for the safety, health, or comfort of the citizens, but its object is to prevent the sinking of gas wells and the laying of pipe lines by persons who desire to convey gas out of the State. It is not a regulation of the mode of procuring, transporting, or using natural gas designed to

secure the health, safety, or comfort of the citizens of Indiana. Neither in the title nor in the body of the act is it professed to be the legislative purpose to regulate the mode of procuring, transporting, or using natural gas. From beginning to end the purpose is plainly and unmistakably manifested, and that purpose is to prohibit the transportation of natural gas beyond the limits of the State. The act is, in effect, as it is in words, a legislative prohibition directed solely against a designated class of persons. It is not the mode of transportation against which the prohibition is directed, but the persons who engage in the business. Plainly—too plainly for denial—the object of the statute is to keep natural gas within our borders. Its object is not to protect our citizens from injury from the mode of procuring and transporting gas adopted by those who engage in the business of procuring or transporting it. The act can not be taken out of the operation of the Federal decisions upon the theory that it is a valid exercise of the police power resident in every sovereign state, for the theory is without foundation.

The right of eminent domain resides in every state as one of the great elements of sovereignty. It was at one time held by the Supreme Court of the United States that the general government could not exercise the right within the territorial limits of a state. *Pollard* v. *Hagan,* 3 How. 212 (223). But this doctrine was denied in *Kohl* v. *United States,* 1 Otto, 367. Whether the right of a State is, or is not, exclusive, or how far that of the general government extends, is, however, not material here, for there can be no doubt that the right dwells in the state. But whether the state can, by the exercise of this right, or by the denial of it, interfere with interstate commerce is a question of no little difficulty and importance. Happily we are spared the delicate and difficult task of determining whether a state can delegate the right of eminent domain to persons who confine their business exclusively within the territorial limits of the state,

and deny it to those engaged in a business extending from state to state. The language of the act forbids the conclusion which counsel seek to, establish, that the legislature meant to do no more than deny the right of eminent domain to persons desiring to transport natural gas from Indiana. The language of the section we have quoted leaves no room for construction, for, beyond controversy, its meaning is that no person shall be permitted to transport natural gas to another state. But if there were doubt, it is entirely banished by other parts of the act. In the title is written: "An act to prohibit any person, firm, corporation, company or voluntary association, organized under the laws of this State or any other State, from piping or otherwise conveying from any point or points in this state to any point or points without the State of Indiana any natural gas or petroleum." The third section of the act prescribes a penalty for a violation of its provisions, and the provisions of this section apply to persons who acquire rights by purchase as well as those who secure rights by condemnation. The provisions of the act are, therefore, firmly interlaced. There is a complete and indivisible unity. The unification is so thorough that no separation can be effected, and nothing remains but to read the act as an entirety and as it is written. Taking the act as it is written, the only possible conclusion is that it was meant to prohibit the transportation of natural gas from the State by any person, natural or artificial, no matter whether the right to the gas and its transportation is acquired by contract or by condemnation.

We are not unmindful of the rule that statutes upon the same subject should be construed together, and we have given all the statutes relating to natural gas careful study. The only conclusion which can be maintained, as our investigation has convinced us, is, that the act under immediate mention is not affected by any of the other acts, for it is complete in itself, and has a clearly defined purpose, and that purpose is to prohibit gas from being transported out of the state.

It is not possible to sustain the act, as counsel endeavor to do, upon the principle that the state may impose restrictions on foreign corporations. We have more than once enforced the rule that the Legislature may regulate or restrict the business of foreign corporations within this state. *Phenix Ins. Co.* v. *Burdett*, 112 Ind. 204; *Insurance.Co.* v. *Brim*, 111 Ind. 281; *State, ex rel.*, v. *Insurance Co.*, 115 Ind. 257; *Blackmer* v. *Royal Ins. Co.*, 115 Ind. 291. But we have not adjudged that the rule can be applied where it operates upon matters of interstate commerce, nor can we do so without coming in direct conflict with the law as declared by the court invested with exclusive appellate jurisdiction of such questions. The decisions of that court utterly demolish the theory of counsel that under the power to restrict foreign corporations, may be placed the right to legislate in matters respecting the commerce between the states. Those decisions are absolutely conclusive.

There may be, and doubtless there are, objections to the act not argued by counsel nor discussed by us. One objection occurs to us which we believe it proper to notice. That objection is this: It is not in the power of the Legislature to prevent one citizen from buying or another from selling property. The rights of property are not subject to such absolute legislative control. It is unnecessary to determine to what limitations the general rule we have stated is subject, for it is enough to assert the general rule, and affirm that it applies to such property as natural gas, petroleum, and coal.

We can find no tenable ground upon which the act can be sustained, and we are compelled to adjudge it invalid.

Judgment affirmed.

Filed Nov. 6, 1889.