Matter of the Application of PENNSYLVANIA GAS COM-
PANY for Writ of Prohibition Directed to the PUBLIC
SERVICE COMMISSION, SECOND DISTRICT, OF THE STATE
OF NEW YORK, and to ALFRED C. DAVIS, THE CITY OF
JAMESTOWN and Others, Complainants in a Proceed-
ing Pending Before Said Commission, Entitled " In
the Matter of the Complaint of ALFRED C. DAVIS,
under Section 71 of the Public Service Commissions
Law, against PENNSYLVANIA. GAS COMPANY as to
Price of Natural Gas Charged to Private Consum-
ers — Case No. 6040."

(Supreme Court, Ulster Special Term, March, 1918.)

Certiorari — to review determination of public service commission —
    jurisdiction — pleading — writ of prohibition — corporations —
    Code Civ. Pro. § 2122.
Public service commission — powers of — interstate commerce —
    municipal corporations — statutes — Laws 1907, chap. 429, § 71.

    A proceeding by a writ of certiorari sued out by a foreign
corporation to review the determination of the public service
commission overruling a demurrer challenging its jurisdiction
to entertain a complaint of an increase of rate in the sale of
gas by the corporation to customers in this state is not an
election but a mistake in the selection of the remedy.

    Upon the dismissal of the writ upon the ground that it would
not lie to review any other than a final determination and that
the order overruling the demurrer was not reviewable under
section 2122 of the Code of Civil Procedure, the relator may
seek relief by a writ of prohibition.

    Under the statute (Laws of 1907, chap. 429, § 71), creating
public service commissions and empowering them to fix the
price at which gas, natural or artificial, may be sold to the
public, public service commissions, congress not having legis-
lated upon the subject, may fix the price of natural gas in the
state except where the transaction is a sale by a foreign cor-
poration to a municipality in the state of New York, which
constitutes interstate commerce.

The power of the state in fixing the price at which gas, natural or artificial, may be sold to the public has no limitation except that it should be uniform and not confiscatory and not offensive to the interstate commerce clause of the United States Constitution.

APPLICATION for a writ of prohibition.

Fisher & Fisher, for petitioner.

Ledyard P. Hale, counsel for public service commission, second district.

Thrasher & Clapp (L. L. Thrasher, of counsel), for original complainants.

HASBROUCK, J. On May 31, 1917, Alfred C. Davis and others, consumers of gas in Jamestown, N. Y., filed a petition with the public service commission, second district, complaining of an increase of rate in the sale of gas by the Pennsylvania Gas Company, a foreign corporation. The commission required the gas company to satisfy the complaint or answer. The gas company filed a demurrer challenging the jurisdiction of the commission. The commission overruled the demurrer, holding the subject to be within its cognizance. The gas company then sued out a writ of certiorari to the Appellate Division of the Supreme Court to review the determination of the commission. The writ was dismissed by the court upon the grounds that the writ would not lie to review any other than a final determination and that the order of the commission overruling the demurrer was not a determination susceptible of review under section 2122 of the Code of Civil Procedure. 181 App. Div. 147. After such determination of the certiorari proceeding the gas company noticed an application to the Supreme Court for an

alternative writ of prohibition to restrain the public service commission of the second district from proceeding further upon the petition of the consumers.

The claim of the relator is that the subject of the petition is interstate commerce and that it is of such a character that it lies exclusively within the jurisdiction of congress to regulate and is protected from regulation by the state by the commerce clause of the Constitution.

The public service commission, the respondent, answers:

1. That the relator having elected a proceeding in certiorari is debarred the use of prohibition.

These writs are very dissimilar. The great function of the writ of certiorari is appellate. It runs from a superior to an inferior tribunal to correct its determination. It comprehends any error susceptible of review, while the writ of prohibition will never lie to review a determination or act as a proceeding in appeal; nor will it lie in contemplation of any conduct on the part of an inferior judicial tribunal save that of jurisdiction. The sole function of the writ is to prevent, interrupt or restrain the exercise on the part of an inferior tribunal of a jurisdiction beyond its powers. Certiorari was not open as a remedy to the relator at the time of its invocation. A very different situation arises where the suitor is called on to determine whether he shall sound his action in contract or in tort. It is quite clear in proceeding in certiorari to review the determination of the commission upon the demurrer that there was no election. There was a mistake only in the selection of the remedy. The relator was not thereby precluded from seeking relief through another or apparently inconsistent remedy. *McNutt* v. *Hilkins,* 80 Hun, 238; *Shanahan* v. *Coburn,* 128 Mich. 692; 15 Cyc. D. 262.

It is urged, too, that though certiorari was used it was used prematurely and is a remedy open to the relator when the respondent shall have determined the complaint of the citizens of Jamestown. This is undoubtedly correctly claimed. But in order that a determination might be made we may assume the necessity of pleadings, the introduction of evidence showing the expenses of production, transportation and delivery and involving the cost of a hearing and the consumption of time. It is just such a situation which inspired the Court of Appeals to declare that the use of the writ should not be abridged by technical rules since it was "far better to prevent the exercise of unauthorized power than to be driven to the necessity of correcting the error after it is committed." *Quimbo Appo* v. *People,* 20 N. Y. 542. It needs no argument to demonstrate that under the circumstances if the case be a proper one for the perpetration of the writ that such course be taken rather than that the relator should be relegated to certiorari at the end of a long and expensive trial.

2. That the public service commission has power to fix the price of natural gas in Jamestown even though the transaction is the sale by a citizen of Pennsylvania to a citizen of New York.

Under the law of the state of New York creating public service commissions, they are empowered to fix the price at which gas, natural and artificial, may be sold to the public. Laws of 1907, chap. 429, § 71. This power of the state has no limitation except it should be uniform and not confiscatory and not offensive to the interstate commerce clause of the Constitution. There is no question arising out of the application at bar except that the action sought to be had by the commission is claimed to be a burden or restriction upon such commerce. The facts do not present a case where

the commission has gone beyond the entertainment of the proceeding. There exists, however, the threat of the exercise of the power to fix a rate at which the relator may sell natural gas to the consumers of Jamestown. It might fall out that the commission would hold that the rate established by the gas company was a reasonable and just rate and under such circumstances no grievance would lie with the relator against any action of the commission. We may, however, under the proceedings before the commission wherein the power to fix the rate is asserted assume that if it should find the rate excessive or unjust the commission would order a lower rate than that fixed by the company.

. Speaking on a kindred subject and to the point under discussion, Chief Justice Marshall said, and it is pertinent to the facts upon the application at bar: " It will not meet this argument to say that this state of things will never be produced, that the good sense of the states is a sufficient security against it. The constitution has not confided this subject to that good sense; it is placed elsewhere. The question is, where does the power reside? Not how far will it probably be used." *Brown* v. *State of Maryland,* 12 Wheat. 419.

It thus appears that the exercise of power by the commission upon the rates made by the gas company in the state of New York would constitute interference with such commerce in the nature of a burden or restriction even if any discrimination should not exist. And interference, burden or restriction are quite as obnoxious to such commerce as discrimination itself. *Wabash, St. L. & P. R. Co.* v. *Illinois,* 118 U. S. 575; *Rosenberger* v. *Pacific Express Co.,* 241 id. 48; *Greek American Sponge Co.* v. *Richardson Drug Co.,* 124 Wis. 475.

The inquiry becomes immediately pertinent as to whether sales made by the relator of gas produced in

the state of Pennsylvania to citizens of Jamestown, N. Y., constitute interstate commerce. Upon this subject the authorities leave no room for doubt. Such sales constitute interstate commerce. *State ex rel. Corwin* v. *Indiana & O. Oil & Gas & M. Co.,* 120 Ind. 575; *Haskell* v. *Cowham,* 187 Fed. Repr. 403; *Landon* v. *Public Utilities Commission,* 242 id. 682; *Manufacturers' Light & Heat Co.* v. *Ott,* 215 id. 940.

The claim of the respondent is that though such sales constitute interstate commerce congress has never legislated upon the subject of the sale of gas as of national concern and that therefore the power resides in the states so to do. This contention has been well made in every instance where the subject of the legislation was a matter of local concern and but incidentally or indirectly affected interstate commerce. Mr. Justice Hughes has pointed out in the *Minnesota Rate Cases,* 230 U. S. 403–411, subjects upon which it was competent for the states to legislate even though interstate commerce was indirectly affected. The question, therefore, to be determined here is whether the sales of gas, the price of which is sought to be regulated, are a matter of national or of local concern. For it must be admitted that if the matter is one of national concern, subject to action by congress establishing a uniform regulation, then and in such case without any legislation by congress the subject is beyond the pale of the state. This doctrine after much contention in the United States Supreme Court and the expression of divergent views covering many years was at last in ◦ the overturning of the *Peik Case,* 94 U. S. 177, 178 (see *Minnesota Rate Cases,* 230 id. 414), finally and permanently established by the United States Supreme Court.

"And the question now under consideration whether these statutes (referring to the *State Freight Tax*

*Cases,* 15 Wallace, 232) were of a class which the legislatures of the states could enact in the absence of any act of Congress on the subject was considered and decided in the negative.  \*  \*  \*  It cannot be too strongly insisted upon that the right of continuous transportation from one end of the country to the other is essential in modern times to that freedom of commerce from the restraints which the states might choose to impose upon it that the commerce clause was intended to secure  \*  \*  \*  it would be a very feeble and useless provision but poorly adapted to secure the entire freedom of commerce among the states  \*  \*  \* if at every stage of the transportation of goods and chattels throughout the country the state within whose limits a part of this transportation must be done could impose regulations concerning *price,* compensation or taxation or any other restrictive regulation interfering with and seriously embarrassing commerce." *Wabash, St. L. & P. R. Co.* v. *Illinois,* 118 U. S. 575.  The *Wabash* case, which has remained the law, treated of the right of the state to legislate upon the rates charged by railroads in interstate transportation.

Whether the legislation of the state be directed to the charges of the interstate common carriers or to the taxation of the instruments of such commerce by a direct or indirect imposition or by license, such acts from any aspect are not more offensive to the interstate commerce clause than an act which undertakes to set a price upon the commodity of the resident of another state sold in this state.  If a price may be set by state legislatures or commissions upon gas it may be set upon coal, oil, potatoes, tobacco, wheat or upon any other commodity.  To say that sales of such commodities are local because they find production in localities or are offered for sale in localities is entirely to misapprehend the meaning of the language of our national

court of last resort. The cases reported in the books show that natural gas is the product of several states. 120 Ind. 575; 187 Fed. Repr. 403; 242 id. 682; 215 id. 940.

It therefore could have been made — though it was not by the commerce act of congress February 4, 1887, as amended — the subject of national legislation.

An act may be said to be national in respect of commerce when it involves the right of exchange or trade among the states. It is not dwarfed into local significance simply because the gas is impounded in a certain district in Pennsylvania and sold in a municipality in New York. The place of sale of the commodity is not what fixes the character of the transaction. It is fixed rather by the nature of the transaction itself.

" That portion of commerce with foreign countries and between the States which consists in the transportation and exchange of commodities is of national importance, and admits and requires uniformity of regulation." *Welton* v. *State of Missouri,* 91 U. S. 280; *Wabash, St. L. & P. R. Co.* v. *Illinois, supra.*

" It needs no argument to show that the commerce with foreign nations and between the States which consists in the transportation of persons and property between them, is a subject of national character, and requires uniformity of regulation." *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196–204; *Leisy* v. *Hardin,* 135 id. 100; *Kirmeyer.* v. *State of Kansas,* 236 id. 568.

Speaking directly to the point Sanborn, J., for the Circuit Court of Appeals, Eighth Circuit, says: "Interstate commerce in natural gas including therein its transportation among the states by pipe line is a subject national in its character and susceptible of regulation by uniform rules." *Haskell* v. *Cowham,* 187 Fed. Repr. 408.

This case was followed in *Landon* v. *Public Utilities Co.*, 242 Fed. Repr. 685, where District Judge Booth says: "' Nor is the business carried on by the receiver, though interstate commerce in character, of such inherent local nature that it is subject to the regulation and control that is sought to be imposed by the state in the instant case."

In weight of authority and reason the foregoing cases seem vastly superior to the case of *Manufacturers' Light & Heat Co.* v. *Ott*, 215 Fed. Repr. 945. The decision in that case proceeded upon the theory · that the regulation of charges for the sale of natural gas produced in one state and sold in another was a matter of local concern, unlegislated upon by congress, quoting only in support of the contention of the writing judge, the *Minnesota Rate Cases*.

The general rule determining what character of act upon the part of the state is local and what national is stated in the rate case with comprehensive accuracy.

But in the whole catalogue of specifications there found there is not one which constitutes authority for the state containing the market to fix the price of the foreign commodity which has not yet been added to the general mass of the property of that state.

It follows that an alternative writ of prohibition should be granted restraining further proceedings upon the part of the respondent.

Writ granted.