We see no error in the refusal of the special charges mentioned.

Being of opinion that the case was correctly decided, the motion for rehearing is overruled.

**MASON et al. v. EXPORTERS & TRADERS COMPRESS CO. et al.**

**No. 1690.**

Court of Civil Appeals of Texas. Waco.

April 30, 1936.

Rehearing Denied May 28, 1936.

Tirey & Tirey and Gene Maddin, all of Waco, for appellants.

Stansell Bryan, Barney A. Garrett, and Sleeper, Boynton & Kendall, all of Waco, for appellees.

HOWELL, Special Justice.

This case originated in the justice court and was an action by appellant W. S. Mason, trading as W. S. Mason Cotton Company, against Exporters & Traders Compress Company, Inc., to recover the title and possession of three bales of cotton, or their value.

Exporters & Traders Compress Company filed its bill of interpleader alleging that the cotton sued for was in its warehouse, but there were outstanding warehouse receipts in the possession of C. C. Gipe and made him party defendant and tendered the cotton into court.

C. C. Gipe, appellee herein, answered alleging that he was an innocent purchaser for value of three negotiable warehouse receipts issued by Exporters & Traders Compress Company, Inc., setting out that he had purchased same from one E. P. Simpson, who was an employee of appellant and in whom appellant had intrusted the custody and possession of the negotiable warehouse receipts, representing the cotton in controversy, and that he, appellee, had no notice of any defect in title of E. P. Simpson.

Texas Cotton Co-Operative Association filed its plea of intervention claiming the cotton belonged to it and that W. S. Mason, trading as W. S. Mason Cotton Company, was its agent and that any recovery had by W. S. Mason would be for the benefit of it.

Judgment was rendered in favor of appellee C. C. Gipe in the justice court for the recovery of title and possession of the three bales of cotton evidenced by warehouse receipts issued by Exporters & Traders Compress Company, Inc., Nos. 330981, 327400, and 330210.

The cause was appealed to the county court at law, and upon submission to the jury on special issues the jury found as follows:

First, that the warehouse receipts were intrusted to the custody or possession of E. P. Simpson; second, that while E. P. Simpson was intrusted with the custody or possession of the warehouse receipts he failed to return the receipts to W. S. Mason; third, that E. P. Simpson negotiated same to C. C. Gipe; fourth, that C. C. Gipe paid E. P. Simpson for said receipts; and, fifth, that C. C. Gipe had no notice of the fact that E. P. Simpson had no right to sell same. On this verdict, judgment was rendered in favor of appellee C. C. Gipe for title and possession of the three bales of cotton evidenced by the warehouse receipts.

Appellant contends that E. P. Simpson stole the warehouse receipts, and since the warehouse receipts were mere symbols of the goods or cotton in store, if the goods or cotton had been stolen, under the common law, title would not be divested from the true owner; therefore, the sale of the receipts, which evidenced the goods or cotton, could not have the effect of divesting the title. In support of this contention, appellant attacks the judgment rendered on the ground that he was, first, entitled to an instructed verdict, or a judgment non obstante veredicto; and, second, there was neither evidence nor pleadings to support the jury finding.

Appellee contends that under the provisions of the Uniform Warehouse Receipts Act he was a bona fide purchaser for value of the warehouse receipts from E. P. Simpson, who was intrusted with the custody or possession of the warehouse receipts in question, and therefore the title to the cotton, evidenced by the receipts, became vested in him.

It is therefore to be determined whether appellee C. C. Gipe, by taking or buying the warehouse receipts from E. P. Simpson, acquired thereby good title to the cotton as against appellant W. S. Mason, or the Texas Cotton Co-Operative Association.

The warehouse receipts provided on their face, "Upon the return of this receipt and the payment of all charges and liabilities due the undersigned warehouseman, as stated herein, said one bale of cotton will be

delivered to the above named depositor or bearer," and the terms of the receipt are such as to bring it within the provisions of negotiable warehouse receipts, as set out in article 5613 of the Revised Civil Statutes of Texas of 1925.

In 1919, the Texas Legislature enacted the Uniform Warehouse Receipts Act (Rev.St.1925, art. 5612 et seq.), wherein the negotiation and rights of holders of warehouse receipts were defined by statute. It seems clear that it was the intention of this act to facilitate the use of warehouse receipts as documents of title and to protect a purchaser in good faith for value, who holds the receipts. This act was enacted in derogation of the common law, with respect to the sale of personal property, and by enacting this act it was made possible to transfer title of personal property by the transfer or negotiation of the receipts, or documents, which evidenced the goods, and the purpose of this act was to make uniform the law in regard to warehouse receipts.

It, therefore, becomes the duty of this court to construe the several statutes within this act. After diligent search, it appears there is no case in which these statutes have been construed with reference to the particular facts as presented in this case.

By the terms of the warehouse receipt, the cotton in storage was to be delivered to the depositor or to the bearer of the receipt and was negotiable. Article 5648, R.S., of the Uniform Warehouse Receipts Act provides:

"A negotiable receipt may be negotiated by delivery:

"1. Where, by the terms of the receipt, the warehouseman undertakes to deliver the goods to the bearer, or

"2. Where, by the terms of the receipt, the warehouseman undertakes to deliver the goods to the order of a specified person, and such person or a subsequent indorsee of the receipt has indorsed it in blank or to bearer.

"Where, by the terms of a negotiable receipt, the goods are deliverable to bearer or when a negotiable receipt has been indorsed in blank or to bearer, any holder may indorse the same to himself or to any other specified person, and in such case the receipt shall thereafter be negotiated only by the indorsement of such indorsee."

Since the warehouse receipt was negotiable and was made to bearer, the negotiation of the receipt could be accomplished under this article by the delivery of the receipt from one person to another, and E. P. Simpson did negotiate the receipt by the delivery of it to appellee C. C. Gipe. This brings us to the question of whether E. P. Simpson could negotiate the receipt.

Article 5651, Revised Statutes, provides:

"A negotiable receipt may be negotiated by the owner thereof or by any person to whom the possession or custody thereof has been entrusted by the owner, if, by the terms of the receipt the warehouseman undertakes to deliver the goods to the order of the person to whom the possession or custody of the receipt has been entrusted, or if at the time of such entrusting the receipt is in such form that it may be negotiated by delivery."

The jury found that E. P. Simpson had been intrusted with the custody or possession of the receipts. The receipts represented the cotton in storage, but when the receipts, which were negotiable by delivery, were intrusted, as the jury found, it was a representation that E. P. Simpson was the owner of the goods, thus clothing E. P. Simpson with indicia of title so that when he negotiated same to appellee C. C. Gipe, the title acquired by C. C. Gipe is the title which the person negotiating the receipt had or had ability to convey, under article 5652, Revised Statutes, which provides:

"A person to whom a negotiable receipt has been duly negotiated acquires thereby:

"1. Such title to the goods as the person negotiating the receipt to him had or had ability to convey to a purchaser in good faith for value, and also such title to the goods as the depositor or person to whose order the goods were to be delivered by the terms of the receipt had or had ability to convey to a purchaser in good faith for value, and

"2. The direct obligation of the warehouseman to hold possession of the goods for him according to the terms of the receipt as fully as if the warehouseman had contracted directly with him."

Did E. P. Simpson have the ability to convey title to the cotton by negotiating the receipts to C. C. Gipe? Article 5658 provides:

"The validity of the negotiation of a receipt is not impaired by the fact that such negotiation was a breach of duty on the part of the person making the negotiation, or by the fact that the owner of the receipt was induced by fraud, mistake, or duress to entrust the possession or custody of the receipt to such person, if the person to

whom the receipt was negotiated, or a person to whom the receipt was subsequently negotiated, paid value therefor, without notice of the breach of duty, or fraud, mistake or duress."

Therefore, the Legislature has by statute made possible the use of negotiable warehouse receipts as documents of title, and where the owner of the goods has permitted another to have the possession or custody of warehouse receipts, negotiable by delivery, a purchaser in good faith for value can rely on the title of the apparent owner, or the person who is clothed with indicia of title, notwithstanding the apparent owner may have breached his duty in negotiating the receipt. Commercial National Bank v. Canal-Louisiana Bank & Trust Co., 239 U.S. 520, 36 S.Ct. 194, 60 L.Ed. 417.

Appellant cites as an authority Shaw v. Merchants' National Bank of St. Louis, 101 U.S. 557, 25 L.Ed. 892, 893, in which it is declared that a bill of lading is entirely different from bills of exchange or promissory notes, when negotiated, even though the statute construed (Wagner's St.Mo. 1872, c. 19, .§ 6) provides that "bills of lading * * * shall be * * * negotiable by written endorsement thereon, and delivery in the same manner of bills of exchange and promissory notes," because the statutes, in respect to bills of lading, did not undertake to define the effect of such transfer, therefore, the statute under construction in the Shaw Case stops short of the Uniform Warehouse Receipts Act wherein it is provided by statute the effect of the negotiation and the rights acquired by a purchaser in good faith for value.

The assignments of error wherein appellant contends that he was entitled to an instructed verdict or judgment non obstante veredicto are not sustained. This disposes of the principal objections of appellant.

By proper assignment, appellant contends that there was no evidence in the case to justify the submission of the special issues to the jury. It seems clear that the pleadings and evidence raised issues of fact which were in dispute, and, therefore, these issues were properly submitted to the jury for its determination, and were decided in favor of appellee. These assignments of error are overruled.

The judgment entered by the trial court is proper and is affirmed.