MARITIME PETROLEUM CORPORATION, PROSECUTOR–AP-PELLANT, v. CITY OF JERSEY CITY AND DIVISION OF TAX APPEALS IN THE STATE DEPARTMENT OF TAXA-TION AND FINANCE, DEFENDANTS–RESPONDENTS.

Argued December 20, 1948—Decided January 10, 1949.

Mr. *John Milton* argued the cause for prosecutor-appellant (*Mr. John Milton, Jr.* and *Mr. Lawrence Whipple* on the brief; *Messrs. Milton McNulty & Augelli,* attorneys).

Mr. *John J. Meehan* argued the cause for defendant-respondent City of Jersey City (*Mr. Charles A. Rooney* on the brief).

The opinion of the court was delivered by

HEHER, J. The question here is whether fuel oil and kerosene of appellant in storage on October 1, 1942 in tanks at Caven Point, in Jersey City, owned and maintained by Tankport Termi-

nals, Inc. for the sale of a warehouse storage service, were subject to an *ad valorem* tax by the local taxing district.

Appellant, a New York corporation with offices in the City of New York, was then a distributor of petroleum products to wholesalers in New York, New Jersey and Connecticut. In accordance with practice, the subject oil and kerosene were purchased by it from the Standard Oil Company and Shell Oil Company to supply the needs of certain of its customers for a twelve-month period, in keeping with contractual obligations, and shipped by tanker from the "American Gulf" area and the West Indies and pumped into the storage tanks, there to await shipment by barge, truck and trailer as the need arose. Such deposits of oil remained in storage on an average of eighteen days.

It seems to be conceded that Tankport Terminals, Inc. was then engaged in the public warehousing business; it was incorporated in New Jersey to carry on the business of "storage and warehousing," and it offered that service for hire to the public generally. Its contract with appellant provided for "the use of a designated storage tank with designated capacity and for the warehousing service covering the handling of the oil to be stored by the customer in and out of that storage and in and out of the terminal." Appellant had no employees at the warehouse.

The old Supreme Court considered this to be the determining factor: "If, on the other hand, the oil, after having been pumped into the tanks" of the warehouse "came to rest within the State and was merely held there for the convenience of buyers either within or without the State, then there was no *bona fide* storage of the same" within the meaning of *R. S.* 54:4–3.20. It distinguished *Crown Can Co. v. Division of Tax Appeals*, 135 *N. J. L.* 517 *(Sup. Ct.* 1947*)*, and *Dearborn Chemical Co. v. Division of Tax Appeals*, 135 *N. J. L.* 580 *(Sup. Ct.* 1947*)*, as cases not involving property "already sold to buyers" and the use of "the device of storing the same in warehouses * * * solely for the purpose of effecting delivery by the seller to the buyer in a practical manner." It was thought significant that "the entire mass of oil was not segregated for the account of such cus-

tomers, but actually remained, to a large extent, in the storage tanks, subject to delivery to customers upon" appellant's direction. But we deem the distinction to be illusory. It is not to be found in the statute.

Under *R. S.* 54:4-3.20, cited *supra,* "All personal property stored in a warehouse" of one "engaged in the business of storing goods for hire" was rendered immune from taxation. Compare *Independent Warehouses, Inc. v. Scheele,* 134 *N. J. L.* 133 *(E. & A.* 1945*).* When reduced to possession, petroleum is a commodity which is the subject of property and of intrastate and interstate commerce. *West v. Kansas Natural Gas Co.,* 221 *U. S.* 229, 31 *S. Ct.* 565, 55 *L. Ed.* 716 *(*1910*): State v. Indiana & O. Oil & Gas & Mining Co.,* 120 *Ind.* 575, 22 *N. E.* 778 *(*1889*).* The Uniform Warehouse Receipts Law of 1907 defines "warehouseman" as "a person lawfully engaged in the business of storing goods for profit." *R. S.* 57:1-1. "Goods" means "chattels or merchandise in storage, or which has been or is about to be stored." *Ibid.* We need not determine whether the definition comprehends all tangible personalty. Certainly, it includes the subject property, for petroleum products are articles of commerce—commodities bought or sold in trade, or market, or by merchants, and therefore merchandise. *R. S.* 54:4-3.20 applies to all warehouses, whether public or private. A common carrier storing goods at the instance of the consignor has been held to be a warehouseman under the duty of reasonable care. *Armstrong Rubber Co. v. Erie R. R. Co.,* 103 *N. J. L.* 579 *(Sup. Ct.* 1927*).* And a garage keeper storing automobiles for hire is a warehouseman charged with the like duty. *New Jersey Mfrs. Ass'n Fire Insurance Co. v. Galowitz,* 106 *N. J. L.* 493 *(E. & A.* 1929*).*

The Uniform Warehouse Receipts Act was primarily designed to achieve uniformity in the law relating to warehouse receipts and thereby to effect the secure and ready use of such receipts as instruments of title and credit. This is made manifest by the title of the original act of 1907. *Pamph. L. p.* 341. *Vide Heffron v. Bank of America National Trust and Savings Ass'n,* 113 *Fed.* (2d) 239 (1940*); Terminal W. & Refrigerating Co. v. Cross Transportation Co.,* 33 *Atl.* (2d) 617

*(1943); Salt River Valley Water Users Ass'n v. Peoria Ginning Co., 27 Ariz. 145, 231 Pac. 415 (1924); Mason v. Exporters & Traders Compress Co., 94 S. W. (2d) 758 (Tex. Civ. App. 1936); Weil Bros. v. Keenan, 180 Miss. 697, 178 So. 90 (1938).*

The cited statute permits the storage of "fungible goods," defined as "goods of which any unit is, from its nature or by mercantile custom, treated as the equivalent of any other unit." *R. S.* 57:1–1. A warehouseman is obliged to keep the stored goods so far separate from the goods of other depositors, and from the goods of the depositor himself for which a separate receipt has been issued, as to permit at all times the "identification and redelivery" of the goods deposited; but if authorized by agreement or by custom, a warehouseman may mingle fungible goods with other goods of the same kind and grade, and in such case the various depositors of the mingled goods "shall own the entire mass in common, and each depositor shall be entitled to such portion thereof as the amount deposited by him bears to the whole," and the warehouseman shall be severally liable to each depositor "for the care and redelivery of his share of such mass to the same extent and under the same circumstances as if the goods had been kept separate." *R. S.* 57:1–25; 57:1–26; 57:1–27.

█ Fungible commodities are such as belong to the same class and may be exchanged indifferently one for another, and so are not required to be delivered in specie to satisfy the warehouseman's obligation. Although not limited to such as are the subject of bulk storage, fungible things are customarily stored in bulk. Grain stored in grain elevators and warehouses is the classic example of fungible goods, but petroleum products are not less so, especially when the term is viewed in the light of the subject matter and the legislative purpose to provide for warehouse receipts having the attributes of negotiable instruments of credit. Under *section* 57:1–26, cited *supra,* the parties may by agreement authorize the commingling of goods and merchandise in storage, and thus give the subject matter the statutory characterictics of fungible goods, if the goods are capable of acquiring that quality. And mercantile custom may give rise to the like sanction. In the view of the statute, goods

may be of one or three clases: inherently fungible, or capable of acquiring that quality by agreement, or quite incapable thereof. In cases within the first two categories, the warehouseman may mix the goods and merchandise so that their identity is lost and deliver the equivalent in full discharge of his obligation under the Warehousemen's Act. *Interstate Banking Co. v. Brown,* 235 *Fed.* 32 *(1916).*

The term "fungible" is derived from the latin "fungi", perform, discharge. Fungible things are generally defined as interchangeable—capable of mutual substitution. They are of such a kind or nature that one specimen or part may be used in place of another specimen or equal part in the satisfaction of an obligation. The term is applied, in the Civil law and various Civil-law systems, and in jurisprudence, to things that in general are estimated in number, weight, or measure, and cannot be used except by permanently appropriating them. *Webster's New International Dictionary (1947).* "Fungible" comprises things "consumable by use, and returnable in kind. Wine is a fungible commodity." *Balentine's Law Dictionary.* It is a term applicable to "things that are consumed by the use, as wine, oil, etc., the loan of which is subject to certain rules, and governed by the contract called *mutuum.* See *Schmidt, Civ. Law of Spain and Mexico* 145; *Story, Bailm." Bouvier's Law Dictionary.* And the noun "mass" in *sections* 57:1–26 and 57:1–27, cited *supra,* signifies liquid as well as solid matter. *Webster's New International Dictionary.*

Thus, the subject petroleum products constituted "personal property" stored in a warehouse devoted to "storing goods for hire" within the intendment of *section* 54:4–3.20, and were therefore immune from taxation. Neither the duration of the storage nor the commingling of the stored goods with others of the like class, for use in the fulfillment of contracts with customers, bears upon the quality that makes for exemption under the statute. The contrary view would frustrate the outstanding legislative design. The policy of the exemption is to place such warehouses on an economic parity with the tax-free warehouses of neighboring states, and thus to lend the aid and encouragement found essential to the provision of such facilities

in New Jersey and thereby to serve the general welfare rather than to. alleviate the burden of the individual owners of the property. *Vide Schwartz v. Essex County Board of Taxation,* 129 *N. J. L.* 129 *(Sup. Ct.* 1942*),* affirmed 130 *N. J. L.* 177 *(E. & A.* 1943*).* Where the public interest is substantially served, the legislative discretion is not arbitrary.

But the insistence is that, even so, there is no immunity from taxation here for want of a verified claim for exemption submitted in accordance with what is conceived to have been the requirement of *R. S.* 54:4–15, later repealed by ch. 163 of the Pamphlet Laws of 1945. We take a different view.

 Under Chapter 4, Article 1, of Subtitle 2 of the statute, all property, real and personal, within the State's jurisdiction "not expressly exempted from taxation or expressly excluded from the operation" of that chapter is made subject to taxation at true value; and the local assessors are enjoined to assess all such property accordingly. *R. S.* 54:4–1. In aid of the performance of this duty, every inhabitant of the taxing district and every owner of personal property therein is directed, on the demand of the assessor, to "render a true account of his name and personal property, money, effects and credits." *R. S.* 54:4–12. There was no such demand here. As we have seen, the exemption provision is that all personal property stored in a warehouse shall be exempt from taxation under that chapter. *R. S.* 54:4–3.20. The exemption is absolute and unconditional; and if the assessor should, in defiance of this peremptory legislative mandate, assess personalty stored in a warehouse of the statutory class, the assessment would be nugatory. The statutory immunity from taxation was not conditioned upon the interposition of a sworn claim for exemption.

██ *R. S.* 54:4–15, now repealed, is not applicable here. It had relation to the assessment of intangibles as well as tangible personal property; and the clause relating to exemptions obviously did not have reference to tangible personal property stored in a warehouse. It read thus: "No allowance or deduction shall be made for personal property or securities claimed to be exempt from taxation, unless a sworn claim therefore shall be made, setting forth a detailed list of the securities and

personal property claimed to be exempt, the dates when they were purchased, and that they were not purchased with intent to escape taxation." Viewed in the light of *R. S.* 54:4–12, 54:4–14, and the associated sections, it is clear that *section* 54:4–15 was not designed to qualify or condition the immunity from taxation granted by *section* 54:4–3.20 as to goods stored in warehouses; it applied only when the assessor demanded an account of personal property, money, effects and credits under 54:4–12. The latter section also provides that the assessor shall set down the value of the personal estate assessed, including the amount of the collectible debts due except debts secured by mortgage on real estate in this state, and "the amount allowed by the assessor as a deduction from such value for debts due and owing by the taxpayer, and for exemptions, and the net value of personal property assessed." It is altogether plain that information as to "dates of purchase" and whether the property was "purchased" with intent to escape taxation could have no bearing whatever on the right to exemption under *section* 54:4–3.20 cited *supra*. This illustrates the limited application of the quoted provision of *section* 54:4–15. Compare *MacPherson v. State Board of Tax Appeals,* 127 *N. J. L.* 599 *(E. & A.* 1941*).* The exemption depends upon other and different considerations wholly unrelated to the interests of the property owner. The question for the assessor was simply whether the merchandise was actually stored in a warehouse of the statutory class. Such tax immunity does not rest in the inherent characteristics of the property, nor in the use to which it is put, but rather in the location and relation of the property to a business the exemption was designed to serve in the common interest. The repeal of section 15 in 1945 suggests uncertainty of meaning and inutility that made for confusion in the administration of this chapter of the Tax Act. At all events, the application of the provision to goods stored in a warehouse would contravene the essential legislative policy of economic equality for storage warehouses embodied in the exemption clause; and it is to be confined accordingly.

The context of an act or acts in *pari materia* may serve to enlarge or restrain general words, and thus to bring

the operation of the act within the evident intention of the Legislature. A statute is to be construed as a whole with reference to the system of which it is a part. Apparently conflicting provisions are to be reconciled in accord with the general intent. The true meaning of any clause or provision ordinarily is that which best comports with the subject and general object of the act. *Lewis' Sutherland Statutory Construction (2d ed.) sec.* 348.

The judgment is accordingly reversed; and the cause is remanded with direction to vacate the assessment.

*For reversal:* Chief Justice VANDERBILT and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING, and ACKERSON—7.

*For affirmance:* None.