**R. E. HUNTLEY COTTON COMPANY et al., Appellants,**

v.

**Welton FIELDS et al., Appellees.**

**No. 8711.**

Court of Civil Appeals of Texas, Amarillo.

April 29, 1977.

Rehearing Denied May 31, 1977.

J. R. Blumrosen, Lubbock, Garrett, Settle & Callaway, Phillip W. Gilbert, Fort Worth, Travis D. Shelton, Lubbock, and Grady, Johnson, Smith & Blakeley, Thomas A. Blakeley, Jr., Dallas, Jones, Trout, Flygare & Moody, Chauncey Trout, Lubbock, for appellants.

McClendon, Richards & Campbell, Tom M. Richards, Lubbock, for appellees.

ELLIS, Chief Justice.

The trial court temporarily enjoined defendants Allenberg Cotton Company, Inc., R. S. Tapp, d/b/a R. S. Tapp & Co., Adolph Hanslik Cotton Company, Inc., and R. E. Huntley Cotton Company, d/b/a Panhandle Warehouse and Compress Company from removing 1640 bales of cotton grown by Welton Fields and several other plaintiff cotton farmers and stored in the defendant Panhandle's warehouse. The trial court required an injunction bond in the amount of $1,500. All affected defendants have appealed and by their respective points of error have raised issues concerning (1) the adequacy of plaintiffs' legal remedies, (2) the plaintiffs' probable right of relief and (3) the adequacy of the injunction bond. Reversed and rendered.

The principal controversy in this suit arises out of the plaintiffs' sale of 1765 warehouse receipts to Vaughn B. Nowlin, an F.O.B. cotton buyer. These sales occurred during the early months of 1976, and the plaintiffs were paid with checks drawn on the First State Bank of Childress, Texas (hereinafter referred to as the Bank). The cotton represented by the warehouse receipts was stored at the warehouse of the defendant R. E. Huntley Cotton Company d/b/a Panhandle Warehouse and Compress Company in Cottle County. The Bank dishonored Nowlin's checks to the plaintiffs. At about the same time (February 25 to March 10, 1976), Nowlin sold the warehouse receipts to the three defendant cotton companies. At the time these transfers were effected, none of the defendants had any actual knowledge that the plaintiffs had not been paid. In quick succession, Nowlin came within the jurisdiction of the federal bankruptcy court and the plaintiffs filed this lawsuit seeking return of the warehouse receipts in the defendants' hands, damages from the Bank and an injunction restraining the defendants from removing 1640 bales of cotton stored in the warehouse. The trial court temporarily enjoined the defendants from disposing of, selling, encumbering, giving away or otherwise removing the cotton from Cottle County. A

$1,500 injunction bond was required of the plaintiffs pursuant to Tex.R.Civ.P. 684. In their appeal, all four defendants have presented similar arguments as to why the injunction should be dissolved.

■ All defendants have contended that the injunction should be dissolved because the plaintiffs had an adequate remedy at law. It is true that the granting or denial of a temporary injunction normally rests within the discretion of the trial court. *Transport Co. of Texas v. Robertson Transports*, 152 Tex. 551, 261 S.W.2d 549 (1953); *Southwestern Chem. & G Corp. v. Southwestern P. L. Co.*, 369 S.W.2d 489 (Tex.Civ.App.—Houston 1963, no writ). Furthermore, injunctive relief will be granted if the available legal remedy is not an effective remedy. *Baucum v. Texam Oil Corporation*, 423 S.W.2d 434 (Tex.Civ.App.—El Paso 1967, writ ref'd n.r.e.).

■ It is our opinion that a suit for damages would be an effective legal remedy in this case. Cotton is a commodity that has a readily determinable value at any particular time. No bale of cotton is unique or different from other bales of cotton, and if any of the defendants have converted any of the plaintiffs' cotton, the damages are readily ascertainable. No proof was produced showing the defendants would be unable to respond in damages. We will not presume them to be insolvent. *See Deal v. Carlton*, 237 S.W.2d 1000 (Tex.Civ.App.—Galveston 1951, no writ). Granting a temporary injunction when the defendants were able to respond in damages constituted an abuse of the trial court's discretion. *Hancock v. Bradshaw*, 350 S.W.2d 955 (Tex.Civ.App.—Amarillo 1961, no writ); *Lewis v. Clark*, 129 S.W.2d 421 (Tex.Civ.App.—San Antonio 1939, writ dism'd jdgmt. cor.). Furthermore, in the instant case, it was not established that some remedy other than injunction (such as sequestration) was inappropriate. *See, Wight v. King*, 227 S.W.2d 336 (Tex.Civ.App.—El Paso 1949, no writ).

The defendants have presented another ground for dissolution of the injunction. They have argued that the plaintiffs failed to demonstrate a probable right of recovery in the trial court. *See, Transport Co. of Texas v. Robertson Transports, supra.* A basic question is whether the warehouse receipts were negotiable. If the warehouse receipts were negotiable and duly negotiated to the defendants, the plaintiffs failed to prove that they had a probable right of recovery because the defendants would have received title to the cotton. Tex.Bus. & Comm.Code Ann. § 7.502. Moreover, if the warehouse receipts are negotiable instruments, there is no justification for a temporary injunction, and the plaintiffs have not pleaded a cause of action against the respective defendants. The plaintiffs have argued that the warehouse receipts were not negotiable documents and/or not duly negotiated to the defendant cotton companies.

■ Negotiability of warehouse receipts is controlled by Tex.Bus. & Comm.Code Ann. § 7.104, which states:

(a) A warehouse receipt, bill of lading or other document of title is negotiable

(1) if by its terms the goods are to be delivered to bearer or to the order of a named person; or . . ..

(b) Any other document is non-negotiable. . . .

The terms of the warehouse receipts involved in this case stated:

Upon return of this receipt and payment of all charges and liabilities due the undersigned Warehouseman as may be accrued at time of presentation, said One Bale of Cotton will be delivered to the above named depositor or its order, or bearer.

The plaintiffs have argued that § 7.104 demands that a negotiable warehouse receipt be payable either to the order of a named person or to bearer. According to their interpretation, if both "order" language and "bearer" language appears on the face of the document, it is non-negotiable. We cannot agree.

We have found no decision rendered under the Uniform Commercial Code which speaks to the precise question raised by the plaintiffs. It is our opinion, however, that

the warehouse receipts the plaintiffs delivered to Vaughn Nowlin were negotiable as bearer documents of title.

■ A literal reading of § 7.104(a)(1) seems to approve of warehouse receipts having terms "bearer or to the order of a named person." Such a document would be negotiable. The warehouse receipts under consideration here contained exactly the same terms (although the terms are reversed). A literal reading of the statute, therefore, supports the defendants' position that the warehouse receipts were negotiable. Furthermore, while words of negotiability are certainly required, the Code authorizes negotiable warehouse receipts to be in any form. Tex.Bus. & Comm.Code Ann. § 7.202. The plaintiffs take the position that the "order" language in the receipts requires endorsement as a prerequisite to negotiation and that without endorsement the receipts were not duly negotiated. Although § 7.501(a) states "A negotiable document of title running to the order of a named person is negotiated by his indorsement and delivery," we note that § 7.501(b)(1) states "A negotiable document of title is also negotiated by delivery alone when by its original terms it runs to bearer." The exact language of the receipts is "to the named depositor or its order, *or bearer*." (Emphasis added). Thus, the receipts, by their original terms, run to "bearer," and there is no limitation on the bearer language. In this case none of the plaintiff-farmers endorsed any of their receipts but delivered them without endorsement to the purchaser. This is consistent with the testimony as to the practice in the cotton business whereby warehouse receipts are treated as bearer instruments without endorsement.

More important, however, is the fact that our conclusion is consistent with prior Texas law. Although but few Texas cases have addressed the subject of negotiability of warehouse receipts, such decisions are favorable to the concept of negotiability. *See e. g., First Nat. Bank of Fort Worth v. Donald,* 84 S.W.2d 325 (Tex.Civ.App.—Fort Worth 1935, writ dism'd). One case, *Mason v. Exporter & Traders Compress Co.,* 94 S.W.2d 758 (Tex.Civ.App.—Waco 1936, no writ), was decided on facts similar in significant respects to the ones before us. The warehouse receipts involved in *Mason* made one bale of cotton deliverable to "the above named depositor or bearer." The case was decided under the Uniform Warehouse Receipts Act, and one provision of the Act provided that the warehouse receipts made deliverable "to the depositor" were non-negotiable, Tex. Laws 1919 ch. 126 § 4 at 216. Thus, the warehouse receipts involved in *Mason* contained words of art which, by themselves, would have negated negotiability. The court held that the additional terms "or bearer" rendered the warehouse receipts negotiable as bearer documents.

Unlike the receipts involved in *Mason,* the warehouse receipts in this case have no terms tending to negative negotiability. Both the "order" term and the "bearer" term are words of negotiability. Consistent with the *Mason* decision, we hold that the warehouse receipts delivered by the plaintiffs to Nowlin and by Nowlin to the cotton company defendants, were negotiable as bearer paper.

■ The plaintiffs, however, have argued that even though the warehouse receipts were negotiable, they were not "duly negotiated" to the defendants within the meaning of Tex.Bus. & Comm.Code Ann. § 7.501(d). That statute provides:

(d) A negotiable document of title is "duly negotiated" when it is negotiated in the manner stated in this section to a holder who purchases it in good faith without notice of any defense against or claim to it on the part of any person and for value, unless it is established that the negotiation is not in the regular course of business or financing or involves receiving the document in settlement or payment of a money obligation. *Id.*

At the temporary injunction hearing, no evidence was produced tending to prove that the cotton companies did not pay value for the warehouse receipts, or that the transaction was not in the regular course of business, or that they had actual notice of

any claims to the warehouse receipts. Furthermore, there is no evidence that the defendants did not act in good faith. Although the plaintiffs presented some evidence that the defendants had access to information sufficient to put them on notice of claims to the cotton, that knowledge is immaterial unless defendants had actual knowledge of facts and circumstances that would amount to bad faith. *Riley v. First State Bank, Spearman,* 469 S.W.2d 812, 816 (Tex.Civ.App.—Amarillo 1971, writ ref'd n. r. e.). *See also, Richardson Company v. First Nat. Bank in Dallas,* 504 S.W.2d 812 (Tex.Civ.App.—Tyler 1974, writ ref'd n. r. e.). There is no evidence of such actual knowledge, and we have concluded that the plaintiffs failed to prove their probable right to relief.

The points of error of Allenberg, Huntley, Tapp and Hanslik, respectively, to the extent that they contend that the court erred in granting the injunctive relief on the grounds that the plaintiffs failed to establish that they had no adequate remedy at law, or to establish their probable right to recover against the defendants on the merits, are sustained. It is therefore our opinion that the injunction should be dissolved.

In other points of error, the defendants have argued that the injunction should be dissolved because the bond required by the trial court was insufficient in amount. In view of our holding that the injunction should be dissolved, no bond will be required. Because this holding is dispositive of the appeal, we do not reach the remaining points.

For the reasons above stated, the order of the trial court granting the temporary injunction is reversed and judgment rendered that the injunction be dissolved.