The following is a compilation of the several surcharges:

\* \* \* \* \* \* \* \*

(Compilation of surcharges omitted for publication purposes.)

\* \* \* \* \* \* \* \*

It will be noted from the above schedule that Mr. Hall was the beneficiary of an improper setoff to the extent of $636.35. Mr. O'Brien received similar preferential treatment to the extent of $457.00. Mr. Hall and Mr. O'Brien must reimburse the trust for these amounts.

Judgment in accordance with the views expressed above.

ANDREW J. WALINSKI, PLAINTIFF, v. MAYOR AND COUNCIL OF THE CITY OF GLOUCESTER; THOMAS WINKELSPECHT, CHIEF OF POLICE OF THE CITY OF GLOUCESTER; AND DOMINIC A. CAVICCHIA, DIRECTOR OF THE DIVISION OF ALCOHOLIC BEVERAGE CONTROL OF THE STATE OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided February 24, 1953.

124

*Mr. Frank M. Lario,* attorney for plaintiff.

*Mr. William E. Hughes,* attorney for defendants Mayor and Council of the City of Gloucester City, and Thomas Winkelspecht, Chief of Police of the City of Gloucester City.

*Mr. Theodore D. Parsons,* Attorney-General (*Mr. Samuel B. Helfand,* Deputy Attorney-General, of counsel), attorney for defendant Dominic A. Cavicchia, Director of the Division of Alcoholic Beverage Control of the State of New Jersey.

HANEMAN, J. S. C. The plaintiff herein originally demanded relief in two counts: (1) a declaratory judgment concerning a certain referendum held in the City of Gloucester City, and (2) an injunction against allegedly extra-legal

acts of the defendants in a purported enforcement of the law resulting from said referendum as defendants interpreted it.

At the pretrial conference the issue was narrowed to the relief demanded in the first count.

Under the pleadings here present, and in the present posture of this case, the defendants have conceded that this is a proper matter for determination under *R. S.* 33:1–47.

The problem arises under *R. S.* 33:1–47, which reads as follows:

"Whenever a petition, signed by at least fifteen per centum (15%) of the qualified electors of any municipality as evidenced by the total number of votes cast for members of the General Assembly, at the then next preceding general election held for the election of all of the members of the General Assembly, in such municipality, shall be presented to the governing board or body thereof, requesting a referendum on the question hereinafter stated, such governing board or body shall adopt forthwith a resolution directing the clerk of the county in which said municipality is situated to print, pursuant to Title 19, Elections, hereinafter referred to as the 'general election law,' upon the official ballot to be used in such municipality at the next ensuing general election, a question to read : ·'Shall the sale of alcoholic beverages be permitted on Sundays in this municipality?' Thereupon the clerk or secretary of the governing board or body of such municipality shall forthwith deliver to such county clerk a certified copy of such resolution. If such copy shall be delivered to the county clerk not less than thirty days before such general election, he shall cause such question to be printed in an appropriate place on the ballot to be used in such municipality at the next ensuing general election, pursuant to the general election law and thereupon all proceedings with respect to the referendum on such question shall be subject to and governed by the general election law as in other cases of the submission of public questions to the electorate.

If a majority of the legal voters voting upon the question shall vote 'Yes,' the clerk of the governing board or body of such municipality shall forthwith in writing notify the commissioner and municipal board, if any, having authority to issue such licenses, of the action taken by the legal voters of such municipality and the sale of alcoholic beverages on Sundays pursuant to the provisions of this chapter shall be permitted in such municipality.

If a majority of the legal voters voting upon the question shall vote 'No,' then the clerk of the governing board or body of such municipality shall forthwith in writing notify the commissioner and municipal board, if any, as the case may be, having authority to issue such licenses of the action taken by the legal voters of such munici-

pality, and thereupon *it shall be unlawful for any person to sell alcoholic beverages in such municipality on Sundays* and such sale shall constitute a violation of this chapter. (Italics supplied.)

The facts in connection herewith are as follows:

Pursuant to the above cited law, a proper petition having been presented to the governing body of the City of Gloucester, there was included on the ballot for the general election held on November 4, 1952, this question:

"Shall the sale of alcoholic beverages be permitted on Sundays in this municipality?"

As a result of a recount it was determined that there were 3,328 votes cast in the negative and 2,373 votes cast in the affirmative on said question.

The plaintiff, a holder of a plenary retail consumption license under *R. S.* 33:1 *et seq.*, seeks to have determined the effect of the statute and referendum, to the end that it may be concluded whether the sale of alcoholic beverages is prevented in the City of Gloucester from midnight Saturday to midnight Sunday (as contended by defendants) or from 2 A. M. Sunday to midnight Sunday, as contended by plaintiff.

The plaintiff's statement of his contention is set forth in paragraph 9 of the complaint, which reads as follows:

"9. Plaintiff avers and contends that within the meaning and intent of the said provisions of the said ordinance and by reason of the result of the said public question as aforesaid, the sale of alcoholic beverages within the said City of Gloucester is prohibited after 2 A. M. on a Sunday to 7 A. M. Monday morning. The said 2 A. M. being the closing hour of Saturday, the weekday preceding the said Sunday and the 2 A. M. being the closing hour as provided in said ordinance and that the said referendum did not affect that closing hour."

Plaintiff as well contends that "in accord with custom the word Sunday * * * should be considered or interpreted to mean the business day of Sunday, beginning with the opening of business on that day."

In support of this argument, plaintiff submits the following in an attempt to show the interpretation of Sunday by the governing body of the City of Gloucester:

(1) A resolution of the City of Gloucester adopted December 8, 1933, which reads in part as follows:

"(12) HOURS OF SALE: Any place for the sale of, consumption or distribution of the alcoholic beverages defined herein shall not open before the hour of 6 A. M. and shall close at 2 A. M. and shall remain closed without engaging in the sale of alcoholic beverages between the hours of 2 A. M. and 6 A. M. of any weekday. Said places shall not be opened at any time on Sunday or engage in the sale or distribution of said alcoholic beverages."

(2) A resolution of the City of Gloucester dated January 3, 1935, which reads as follows:

"BE IT RESOLVED BY COMMON COUNCIL of the City of Gloucester City, County of Camden, from and after the passage of this resolution, that the sale of alcoholic beverages by licensed beverage dealers in the City of Gloucester, shall be legal until the hour of 2 A. M., local time, on Sunday, the first day of the week, commencing Sunday, January 6, 1935.

All resolutions and parts of resolutions inconsistent herewith are hereby repealed."

(3) A resolution of the City of Gloucester dated March 7, 1935, which reads as follows:

"BE IT RESOLVED by Common Council of the City of Gloucester City, County of Camden, from and after the passage of this resolution, that the sale of alcoholic beverages by licensed beverage dealers in the City of Gloucester City shall be legal until the hour of 2 A. M., local time, on Sunday, the first day of the week; and from the hour of 3 P. M., local time, on Sunday, the first day of the week until the hour of 2 A. M. local time, Monday.

All resolutions and parts of resolutions inconsistent herewith are hereby repealed."

(4) An ordinance of the City of Gloucester adopted February 4, 1938, which reads in part as follows:

"Section 3. No alcoholic beverage shall be sold, served or delivered nor shall any licensee suffer or permit the sale, service or delivery of any alcoholic beverage upon any licensed premises directly

or indirectly, between the hours of 2 A. M. and 7 A. M. any weekday or between 2 A. M. and 3 P. M. on any Sunday; provided, however, that beginning with the last Sunday in April of each year and ending with the last Sunday in September of each year the time as aforesaid shall be computed in accordance with Daylight Saving Time.

Section 10. Whenever New Year's Day falls on any day except Sunday, in addition to the opening hours above provided for, this said opening hour shall also be from 2 A. M. to 7 A. M. on New Year's Day."

■■ It is inconceivable that the actions of the governing body of the municipality could be binding upon the question of the intent of the statute. But admitting this to be true, merely for the sake of argument, an examination of the several resolutions and ordinances clearly demonstrates that the said governing body itself clearly recognized that there was no distinction between a "business" day and a calendar day. They demonstrated that express, special and separate provisions must be made for Sunday, *i. e.*, from midnight Saturday to midnight Sunday, from that made for a weekday. This is contrary to plaintiff's present position. Plaintiff's argument, insofar as local action is concerned, in the light of the above official action, is in any event, without merit.

■ In addition, plaintiff argues that the interpretation by the Director of the Division of Alcoholic Beverage Control, or his predecessors, has accorded to the word Sunday, as used in the pertinent statute, the meaning for which he argues. He has cited various conclusions of the Alcoholic Beverage Commissioner to sustain his position. Such constructions are entitled to be given great weight, since they embody long standing statutory construction by the Director. *Passarella v. Board of Commissioners,* 1 *N. J. Super.* 313 *(App. Div.* 1949); *Cino v. Driscoll,* 130 *N. J. L.* 535 *(Sup. Ct.* 1943).

The case of *William Vassos and Charles Murphy, trading as Golden Moon v. Township Committee of the Township of Springfield (Burlington County), Bulletin* 793, *Item* 6, cited by plaintiff, does not sustain his position. As a matter of fact, the Commissioner there decided that a referendum

which prevented Sunday alcoholic beverage sales prohibited such sales from midnight Saturday to midnight Sunday. The balance of plaintiff's argument as to the effect of this conclusion is too strained for consideration.

The remaining rulings cited by the plaintiff do not sustain his position.

▉ In further substantiation of the conclusion that the said Director has interpreted this provision as now argued by defendants, they have cited *Bulletin 520, Item 7*, which again reiterates the conclusion that such a referendum prevents sales at any time on Sunday. Although this bulletin does not come within the confines of *Cino v. Driscoll*, 130 *N. J. L.* 535 (*Sup. Ct.* 1943), it is significant that the Legislature has failed to indicate its disapproval thereof since the Director published the bulletins in question. *Rutherford Lodge No. 547 v. Hock*, 1 *N. J. Super.* 223 (*App. Div.* 1949).

Plaintiff's remaining argument concerns itself with the contention that the Legislature did not intend, by the use of the word Sunday, to designate the calendar first day of the week, or the Sabbath, but rather, as he states, the "business days" and, in effect, that the referendum does not supersede the existing ordinance.

He here argues that under the ordinance above cited, adopted February 4, 1938, the period of time from midnight Saturday until 2 A. M. Sunday is to be deemed a portion of the Saturday "business" day and that hence the sales of alcoholic beverages are to be prohibited only from 2 A. M. on Sunday. The solution of this contention requires an analysis and interpretation of the statute.

▉▉ In order to ascertain the intent of this section of the act we must examine the whole of the context of the act, and the acts or parts of acts *in pari materia*. The parts of a statute are to viewed in relation to the whole to carry out the reasonably probable legislative intent. *Maritime Petroleum Corp. v. City of Jersey City*, 1 *N. J.* 287 (1949); *Hackensack Water Co. v. Ruta*, 3 *N. J.* 139 (1949).

There are three methods by which the sale of alcoholic beverages may be limited on Sunday under the statute.

*R. S.* 33 :1–40 provides in part as follows:

"The governing board or body of each municipality may, as regards said municipality, by ordinance or resolution, limit the hours between which the sale of alcoholic beverages at retail may be made, prohibit the retail sale of alcoholic beverages on Sunday * * *."

*R. S.* 33 :1–47 has already been quoted.
*R. S.* 33 :1–47.1 provides in part as follows:

"Whenever a petition, signed by at least fifteen per centum (15%) of the qualified electors of any municipality as evidenced by the total number of votes cast at the then next preceding general election, held for the election of all of the members of the General Assembly in such municipality, shall be presented to the governing board or body thereof, requesting a referendum on any proposed questions as to whether the hours between which the sale of alcoholic beverages at retail may be made in such municipality on week days, Sundays, either or both, shall be fixed as provided in such petition * * *.

If a majority of the legal voters shall vote affirmatively on the question of whether the hours of sale shall be fixed in the manner set forth in such question or questions, the clerk of the governing board or body of such municipality shall forthwith in writing notify the commissioner and municipal board, if any, of the action taken by the legal voters of such municipality and thereafter the retail sale of alcoholic beverages may be made only within the hours fixed by such referendum. Such sale at any other time within such municipality shall be unlawful and constitute a violation of this chapter.

If a majority of legal voters voting upon such question or questions shall vote in the negative on the question of whether the hours of sale shall be fixed in the manner set forth in such question or questions, the clerk of the governing board or body of such municipality shall forthwith in writing notify the commissioner and municipal board, if any, of the action taken by the legal voters of such municipality and thereafter the hours between which the sale of alcoholic beverages at retail may be made may be regulated as theretofore in such municipality."

■ It is plain, therefore, that it was the intent of the Legislature, in the first instance, to vest the power to determine the hours during which sales may be made on any weekday and Sunday in the local governing body. There is an express provision vesting similar power to declare a complete prohibition on Sunday in said body. *R. S.* 33 :1–40, *supra.* This authority, however, is subject to the control of the "qualified electors" in the community in two respects, by *R. S.* 33 :1–47 and *R. S.* 33 :1–47.1.

By virtue of *R. S.* 33:1–47 the complete prohibition of sales on Sunday is provided. Upon the ascertainment of the result of such a referendum, this statute provides:

> "If a majority of the legal voters voting upon the question shall vote 'Yes,' the clerk of the governing board or body of such ·municipality shall forthwith in writing notify the commissioner and municipal board, if any, having authority to issue such licenses, of the action taken by the legal voters of such municipality and the sale of alcoholic beverages on Sundays pursuant to the provisions of this chapter shall be permitted in such municipality.
>
> If a majority of the legal voters voting upon the question shall vote 'No,' then the clerk of the governing board or body of such municipality shall forthwith in writing. notify the commissioner and municipal board; if any, as the case may be, having authority to issue such licenses of the action taken by the legal voters of such municipality, and thereupon *it shall be unlawful for any person to sell alcoholic beverages in such municipality on Sundays* and such sale shall constitute a violation of this chapter." (Italics supplied.)

■ The only conclusion which can be drawn from this language is that if the vote is in the affirmative the governing body still retains control of the hours by virtue of *R. S.* 33:1–40 ("the sale of alcoholic beverages on Sundays pursuant to the provisions of this chapter shall be permitted in such municipality"—see above quoted statute), but if the vote is in the negative, the governing body retains no control and may not permit any sales on Sunday ("it shall be unlawful * * * to sell alcoholic beverages * * * on Sundays"—see above quoted statute).

By virtue of *R. S.* 33:1–47.1 there is an affirmative provision for a referendum on sales only during the specified hours on "weekdays, Sundays." An affirmative vote on such a referendum makes a sale during such designated hours only legal, and a sale on other than the designated hours illegal. It so removes the control to permit sales on such other than the designated hours from said governing body. A negative vote leaves the control of hours to the governing body as it existed before the referendum.

■ It is plain that the action of the electorate in the event of a negative vote under *R. S.* 33:1–47 and an affirmative

vote under *R. S.* 33:1–47.1 removes completely from the local governing body the power to authorize such sales except as provided by the referendum.

It becomes necessary, therefore, to decide what the Legislature intended by the reference to weekdays and Sundays.

The repeated use of the word Sunday in *R. S.* 33:1–40 and *R. S.* 33:1–47.1, coupled with the use in the latter statute of the word weekday, shows an apt, intentional distinction between said days. Upon reading these two statutes in the light of *R. S.* 33:1–47, the legislative purpose to treat sales on weekdays and Sundays as two distinct problems becomes clear.

In statutory construction, the generally accepted meaning of a word should be accorded to it. In the absence of an explicit indication of a special meaning, words are to be given their common usage. *N. J. S.* 1:1–1; *Ford Motor Co. v. N. J. Dept. of Labor and Industry*, 5 *N. J.* 494 (1950).

The true meaning of any word is that which best comports with the subject and general object of an act. *Maritime Petroleum Corp. v. City of Jersey City*, 1 *N. J.* 287 (1949). The statute itself furnishes the best means of its own exposition; and the legislative purpose here is evident when the whole of the provision is related to the obvious policy and purpose. The intent is the essence and the life of the law. *Glick v. Trustees of Free Public Library*, 2 *N. J.* 579 (1949). On construing a statute, legislative intent controls and the intent and enforcement by the court must be consistent with such intent and not consistent with some supposed unexpressed intent. *Hoffman v. Hock*, 8 *N. J.* 397 (1952); *Lynch v. Borough of Edgewater*, 8 *N. J.* 279 (1951).

Plaintiff has admitted that normally the word Sunday connotes the first day of the calendar week, or the Christian Sabbath. Nor can we see how he could deny such a meaning. In addition, the normal meaning of the word day is the period of time during which the earth makes one revolution on its axis. A day begins at midnight and ends the following midnight, 24 hours later.

*Webster's New International Dictionary* (*2d ed.*) contains the following definitions:

"Day: The period of the earth's revolution on its axis—ordinarily divided into twenty-four hours. It is measured by the interval between two successive transits of a celestial body over the same meridian, and takes a specific name from that of the body * * *.

The mean solar day used in ordinary reckoning of time, and .among most modern nations beginning at mean midnight: its hours are usually numbered in two series each from one to twelve.

Weekday: Any day of the week except Sunday.

Sunday: The first day of the week, regarded by most Christians as a day for rest from secular employments and for religious worship; the Christian Sabbath; the ·Lord's day. It is kept as a weekly commemoration of the day of Christ's resurrection and as the Christian analogue of the Jewish Sabbath."

See also *State v. Reade*, 98 *N. J. L.* 596 (*Sup. Ct.* 1923); *State v. Williams*, 30 *N. J. L.* 102 (*Sup. Ct.* 1862); *Houtsch v. Jersey City*, 29 *N. J. L.* 316 (*Sup. Ct.* 1861); *Richards v. Bayonne*, 61 *N. J. L.* 496 (*Sup. Ct.* 1898).

 The legislative intent seems clear to make a distinction in the control of the sale of alcoholic beverages on weekdays and Sundays. The ordinary and true meaning of the words weekday and Sunday is as above stated. As here used, the word Sunday means the calendar 24-hour day which commences at midnight on Saturday and ends at midnight on Sunday. In view of the apparent legislative intent to vest absolute control in the adoption of permissive hours by referendum under *R. S.* 33:1–47 in the electorate, and the removal of any power from the governing body to designate hours where, as here, there was a majority negative vote, it follows that the true intent was as well to repeal, at least by implication, any ordinance which had been adopted by the governing body prior thereto and inconsistent therewith.

Judgment will be entered accordingly, to the effect that as a result of the above referendum, all sales of alcoholic beverages in the City of Gloucester City during that 24-hour period from midnight Saturday to midnight Sunday are prohibited, and that any sale during such period of time is illegal, as in *R. S.* 33:1–47 made and provided.