30 N.J. Super. 472 (1954)
105 A.2d 6
JAMES W. ESKRIDGE, t/a JIMMY'S TAVERN, DEFENDANT-APPELLANT,
v.
DIVISION OF ALCOHOLIC BEVERAGE CONTROL, PLAINTIFF-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 26, 1954.
Decided May 10, 1954.
*474 Before Judges CLAPP, FREUND and SCHETTINO.
Mr. Joseph Tomaselli argued the cause for the defendant-appellant (Messrs. Malandra & Tomaselli, attorneys).
Mr. Samuel B. Helfand argued the cause for the plaintiff-respondent (Mr. Grover C. Richman, Jr., Attorney-General of the State of New Jersey).
The opinion of the court was delivered by FREUND, J.S.C. (temporarily assigned).
The appellant, owner of a tavern in the City of Camden and holder of a plenary retail consumption license, appeals from an order of the Director of the Division of Alcoholic Beverage Control suspending the appellant's license for five days for violation of a municipal ordinance providing that "No woman shall be served with beverages directly over any bar * * *" The sole question is whether a U-shaped counter at which women are served with alcoholic beverages is a "bar" within the meaning of the ordinance.
At the outset it should be recalled that there is no common, inherent, natural or constitutional right to engage in the business of selling liquor. The power of the State over the sale of intoxicating beverages is plenary. "It is a subject by itself, to the treatment of which all the analogies of the law appropriate to other topics cannot be applied." Paul v. Gloucester Co., 50 N.J.L. 585, 595 (E. & A. 1888); Bumball v. Burnett, 115 N.J.L. 254 (Sup. Ct. 1935). The right of the Legislature or of a municipality under legislative *475 authority to regulate the sale of intoxicants is within the police power of the State and is practically limitless. Meehan v. Excise Commrs., 73 N.J.L. 382 (Sup. Ct. 1906), affirmed 75 N.J.L. 557 (E. & A. 1907). "As it is a business attended with danger to the community, it may be * * * entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils." Crowley v. Christensen, 137 U.S. 86, 11 S.Ct. 13, 34 L.Ed. 620 (1890); Vance v. W.A. Vandercook Co., 170 U.S. 438, 18 S.Ct. 674, 42 L.Ed. 1100 (1898); Eberle v. Michigan, 232 U.S. 700, 34 S.Ct. 464, 58 L.Ed. 803 (1914). Thus, the times when (Walinski v. Mayor, &c., Gloucester City, 25 N.J. Super. 122 (Ch. Div. 1953)), the places where (Lanning v. Board of Excise Commrs., 76 N.J.L. 128 (Sup. Ct. 1908)) and the persons to whom (Cino v. Driscoll, 130 N.J.L. 535 (Sup. Ct. 1943)), intoxicants shall be sold may be determined by the State. Carter v. Virginia, 321 U.S. 131, 64 S.Ct. 464, 88 L.Ed. 605 (1944); Hudson Bergen, &c., Assn. v. Hoboken, 135 N.J.L. 502 (E. & A. 1947); Essex Holding Corp. v. Hock, 136 N.J.L. 28 (Sup. Ct. 1947); In re Schneider, 12 N.J. Super. 449 (App. Div. 1951); In re Larsen, 17 N.J. Super. 564 (App. Div. 1952); In re 17 Club, Inc., 26 N.J. Super. 43 (App. Div. 1953).
The facts are undisputed. The plaintiff's premises consist of two large rooms, one of which is an ordinary barroom; the other is described as a "service room, cocktail lounge or dining room." In it there are tables as well as the U-shaped counter which has about 25 stools with leatherette tops and is about two feet distant from a conventional square bar, the same height as the bar and of similar construction, but no liquor is kept behind the counter, nor are there any taps or water connections. Although a bartender is in attendance behind the square bar, waitresses pick up at the main bar and serve at the U-shaped counter the beverages ordered by the customers there seated. The defendant's agents testified that on one occasion at about 11 P.M. there were about 16 women patrons being served at the U-shaped counter and on another occasion approximately 10.
*476 The plaintiff argues strenuously that the counter is not a "bar," because it is devoid of the usual bar equipment and, therefore, does not come within the definition of a "bar." For the purpose of argument, it may be conceded that there is much room in the marketplace of ideas for opposing viewpoints on the question of what constitutes a "bar." Webster's New International Dictionary (2nd ed. 1950), defines it as "a counter at which liquor or food is served, usually to customers;  extended to the space immediately behind or in front of it; also, a room containing such a counter; as, luncheon bar, oyster bar, saloon bar; a barroom." Actually, this is a revision of the definition given in Webster's first edition, that a bar is "`a portion of the room behind the counter where liquors for sale are kept.'" Mayor, &c., of Town of Leesburg v. Putnam, 103 Ga. 110, 29 S.E. 602 (Sup. Ct. 1897); Latta v. Bell, 122 N.C. 641, 30 S.E. 15 (Sup. Ct. 1898); Hinton v. State, 137 Tex. Cr. R. 352, 129 S.W.2d 670 (Crim. App. 1939). See, too, 9 C.J.S., p. 1537 and 48 C.J.S., Intoxicating Liquors, § 15, p. 148. In determining the question at issue it has been held, however, that the public display of liquor is not an essential element. The Supreme Judicial Court of Massachusetts held in Commonwealth v. Rogers, 135 Mass. 536 (1883) that
"it would certainly be difficult, and probably impossible, to define with absolute precision the meaning of the term `public bar' so as to include everything that would, and exclude everything that would not, constitute such a bar, though under any given set of facts it might not be difficult to determine whether or not they constituted such a bar. Such a bar must obviously be something at which liquors are sold, to be drunk on the premises. * * * We do not think the public display of liquors by any means an essential element in determining the question at issue, as contended by the defendant."
Commonwealth v. Everson, 140 Mass. 292, 2 N.E. 839 (Sup. Jud. Ct. 1885).
The obvious purpose and intent of the ordinance under attack was that women should be served liquors only when seated at tables and not when seated at a counter where they would be mingling with other customers. Ordinances *477 which forbid the serving of liquor to women except when seated at tables do not violate any constitutional right of either the licensee or the women, and are well within the regulatory power of the State. Randles v. Washington State Liquor Control Board, 33 Wash.2d 688, 206 P.2d 1209, 9 A.L.R.2d 531 (Sup. Ct. en banc, 1949); Adams v. Cronin, 29 Colo. 488, 69 P. 590, 63 L.R.A. 61 (Sup. Ct. 1902), affirmed sub nom. Cronin v. Adams, 192 U.S. 108, 24 S.Ct. 219, 48 L.Ed. 365 (1904).
The equal protection clause of the Fourteenth Amendment does not prohibit all classification per se. Atchison, Topeka & Santa Fe v. Matthews, 174 U.S. 96, 109, 19 S.Ct. 609, 43 L.Ed. 909 (1899). The ordinance in the instant case is not so discriminatory as to render it invalid. Goesaert v. Cleary, 74 F. Supp. 735 (D.C.E.D. Mich. 1947), affirmed 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948). There the court had before it for consideration a statute of the State of Michigan which prohibited women from being licensed as bartenders, except wives or daughters of the owners of the liquor establishment. In holding that this did not violate the equal protection clause of the Fourteenth Amendment, Mr. Justice Krankfurter made observations which are pertinent here.
"The Fourteenth Amendment did not tear history up by the roots, and the regulation of the liquor traffic is one of the oldest and most untrammeled of legislative powers. Michigan could, beyond question, forbid all women from working behind a bar. This is so despite the vast changes in the social and legal position of women. The fact that women may now have achieved the virtues that men have long claimed as their prerogatives and now indulge in vices that men have long practiced, does not preclude the States from drawing a sharp line between the sexes, certainly, in such matters as the regulation of the liquor traffic. * * * The Constitution does not require legislatures to reflect sociological insight, or shifting social standards, any more than it requires them to keep abreast of the latest scientific standards. * * *"
Here, it seems to us that the plaintiff has attempted to circumvent the local ordinance, and while the counter may not be a "bar" within the strict dictionary definition of the *478 word, it is, nevertheless, the kind of structure which the municipality intended to proscribe for women. Ordinarily the true meaning of any word is that which best comports with the subject and general object of the ordinance. Maritime Petroleum Corp. v. City of Jersey City, 1 N.J. 287, 298 (1949); Central R.R. Co. of N.J. v. Director, Division of Tax Appeals, 8 N.J. 15, 28 (1951); Walinski v. Mayor, &c., Gloucester City, supra. Moreover, the Director of the Division of Alcoholic Beverage Control has construed similar facilities as a "bar," and it is well settled that administrative interpretations by the Director will not be lightly disturbed; they are accorded great weight. Cino v. Driscoll, supra; Kravis v. Hock, 137 N.J.L. 252 (Sup. Ct. 1948); Board of National Missions v. Neeld, 9 N.J. 349, 360 (1952).
Former Director Hock, in Re Choice Liquors, Inc., Bulletin 827, Item 5, considered the purpose of the regulation here involved to be "the prohibition against women mingling and drinking with men at the bar." As early as 1934 former Commissioner Burnett, in interpreting an identical resolution adopted by the City of Asbury Park, In re Foster, Bulletin 41, Item 1, said:
"It does not prohibit service to a woman who is seated at a table in the barroom providing that she is not standing at the bar. * * * That intent was plainly to prohibit service to women at the bar."
And in Holderness v. Orange, Bulletin 257, Item 1, Commissioner Burnett, in construing an ordinance that no female was to be served at a public bar, said:
"The bar has an individuality of its own, measurably distinct from the rest of the premises. It is normally frequented by men. It suggests an informal atmosphere in which all too often the usual amenities and restraints do not prevail. It invites commingling, a commonness which all too often leads to abuses inherent in liquor traffic and of which it was the objective of the ordinance to remedy."
Director Cavicchia, in Blue Mirror Inn, Inc., Bulletin 961, Item 5, held that,
"It is the use to which a facility is put that constitutes it a bar  not its equipment (such as bottles and glasses) or its fixtures *479 (such as beer taps and sinks). * * * I am convinced that the purpose underlying the section in question was to keep women away from any public bar, whatever its equipment or lack of equipment, and to get them seated at tables."
We are in accord with the foregoing interpretations and conclude that the U-shaped counter is a bar within the meaning of the ordinance.
Affirmed.