102 N.J. Super. 77 (1968)
245 A.2d 373
EDWARD P. GALLAGHER, TRADING AS THE PUB, AND ANN GUNSIOROWSKI, PLAINTIFFS,
v.
CITY OF BAYONNE, A MUNICIPAL CORPORATION, AND HUGH E. GREENAN, DIRECTOR OF PUBLIC SAFETY OF THE CITY OF BAYONNE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
July 10, 1968.
Mr. Patrick D. Conaghan for plaintiffs (Messrs. Russell and Conaghan, attorneys).
Mr. James P. Dugan, Corporation Counsel for City of Bayonne, for defendants.
MATTHEWS, J.S.C.
On August 3, 1943 the governing body of the City of Bayonne adopted an amendment to its Alcoholic Beverage Control Ordinance providing:
*78 "Section 14. No alcoholic or other beverage or food shall be served to any female except at a table where such female shall be seated. No female shall be permitted to stand or sit at a public bar at any time; nor shall minors be permitted to enter or remain in any room in which a bar is located unless the minor is accompanied by his or her own parent or guardian. This section shall not prohibit the sale of alcoholic beverages for consumption off the licensed premises to a female over twenty-one years of age, provided she shall leave the licensed premises immediately upon consummation of such sale."
Plaintiffs Gallagher, a tavern owner and licensee of the City of Bayonne, and Ann Gunsiorowski, a taxpayer of the City, bring this action seeking a declaratory judgment invalidating that ordinance. See N.J.S. 2A:16-50, et seq.; State v. Baird, 50 N.J. 376 (1967). Plaintiffs contend that the above quoted amendment is invalid because it is not reasonably related to the police power, and contravenes the provisions of Art. I, § V of the New Jersey Constitution.
In seeking to uphold the ordinance, defendant City maintains that it is designed to avoid claimed social evils which result from the mingling of men and women at bars. Apparently, the amendment was brought about during World War II because of the large number of naval personnel concentrated in the Bayonne area at that time, and some unfortunate experiences which occurred in taverns and bars involving males and females during that period. In addition, the City contends that under the decision of the Appellate Division in Eskridge v. Division of Alcoholic Beverage Control, 30 N.J. Super. 472, 476 (1954), the validity of ordinances such as that under examination here are unquestionably valid.
Plaintiffs concede the existence of Eskridge and its holding to the effect that "Ordinances which forbid the serving of liquor to women except when seated at tables do not violate any constitutional right of either the licensee or the women * * *," but argue that the case is no longer controlling in view of the more recent decision of our Supreme Court in *79 One Eleven Wines & Liquors, Inc. v. Division of Alcoholic Beverage Control, 50 N.J. 329 (1967).
Unquestionably, the Appellate Division in Eskridge did sustain the validity of an ordinance similar to the one before this court, despite the fact that the opinion of the court stated that "The sole question is whether a U-shaped counter at which women are served with alcoholic beverages is a `bar' within the meaning of the ordinance."
In One Eleven Wines & Liquors, the Supreme Court had before it several license suspension proceedings which had sustained charges made by the Division of Alcoholic Beverage Control against plaintiffs for permitting apparent homosexuals to congregate in their bars. In 1930 the State Commissioner of Alcoholic Beverage Control had adopted Rule 4 which prohibited female impersonators from congregating in public licensed premises. In 1936 the commissioner amended Rule 5 which had been previously adopted by him to include an express prohibition of lewdness and immoral activities on licensed premises. Again, in 1950 Rule 5 was revised to include an express prohibition of "foul, filthy, indecent or obscene language or conduct." During the years prior to 1954, the Division (formerly Department) instituted proceedings under Rule 4 on the basis of evidence that apparent homosexuals had been permitted to congregate in licensed premises. Since 1954 the Division has instituted proceedings involving such charges under Rule 5. The Supreme Court, through Mr. Justice Jacobs, unanimously reversed the license suspensions which had been affirmed by the Appellate Division, holding that the Division was not justified in disciplining licensees solely because apparent homosexuals were permitted to congregate at bars, absent a clear showing of individual acts alleged to be violative of the provisions of Rule 5 aimed at lewdness and immoral conduct within the licensed premises. In the course of its opinion the Court noted:
"When in the 1930's the Department of Alcoholic Beverage Control first took its severe position, it acted on the assumption that the mere congregation of apparent homosexuals had to be outlawed to *80 achieve effective control. It of course had no experience to support the assumption but it took the prohibitory course as the safer one for the then fledgling system. At the time, the interests of the patrons in question were given little consideration and were in any event overwhelmed by the then highly felt transitional need for sweeping restraint. Now, in the 1960's, the transitional need as such is long past and it is entirely appropriate that full sweep be given to current understandings and concepts. Under them it seems clear that, so long as the division can deal effectively with the matter through lesser regulations which do not impair the rights of well behaved apparent homosexuals to patronize and meet in licensed premises, it should do so. Such narrower course would be consonant with the settled and just principle that restrictions adopted in the exercise of police powers must be reasonable and not go beyond the public need." (at p. 341)
In its opinion in Eskridge, the Appellate Division, in upholding the suspension there involved, stated:
"The right of the Legislature or of a municipality under legislative authority to regulate the sale of intoxicants is within the police power of the State and is practically limitless. * * * `As it is a business attended with danger to the community, it may be * * * entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils.'" (emphasis added) (at pp. 474-475)
I believe that a reading of One Eleven Wines & Liquors, indicates that the police power exercised in the regulation of the sale of intoxicants is not practically limitless and that it must be exercised under a rule of reason instead of arbitrary fiat, and with regard for the rights of individual patrons who desire access to licensed premises. Considering this observation, I am disinclined to follow the holding in Eskridge as determinative of the issue presently before me.
In an argument somewhat analogous to that of the Division in One Eleven Wines & Liquors, the City here contends that the mingling of males and females at a bar is in some manner deleterious to the morals of the community. Supporting data for such a conclusion are not forthcoming. In actuality, under the operation of the Bayonne Ordinance, women may be served a drink in a barroom as long as they are seated *81 at tables, and, I am informed, may purchase package goods over a bar for consumption off premises. For some reason, however, a woman standing or sitting at a bar in the company of men for the purpose of being served a drink constitutes, at least in the minds of the City fathers of Bayonne, an occasion of sin.
Under the New Jersey Civil Rights Act there are the following provisions:
"N.J.S.A. 18:25-4. All persons shall have the opportunity * * * to obtain all the accommodations, advantages, facilities and privileges of any place of public accommodation * * *. This opportunity is recognized as and declared to be a civil right." (emphasis added.)
Under the provisions of N.J.S.A. 18:25-5, a place of public accommodation is defined as including any tavern or roadhouse.
Article I, § V of the New Jersey Constitution provides:
"No person shall be denied the enjoyment of any civil or military right, nor be discriminated against in the exercise of any civil or military right, nor be segregated in the militia or in the public schools, because of religious principles, race, color, ancestry or national origin."
Under the provision of Article 10, § IV of our Constitution, the term person or persons as used therein shall be taken to include both sexes.
My reading of these two sections of the Constitution, together with the statutory declaration as to the use of public accommodations in the Civil Rights Act, leads me to the conclusion that the people and the legislature have created a clear prohibition against discrimination in this area of civil rights based on sex.
While I am satisfied that our organic and statutory law will not tolerate discrimination such as is established under the ordinance here in question, I am not unaware of the fact that the Supreme Court of the United States has, *82 (see e.g. Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948), given its approval to legislation which discriminates against women with respect to access to premises in which alcoholic beverages are sold. I will not speculate as to whether such a holding would be forthcoming today, considering changes in social customs and mores. I cannot accept, however, as a general assumption that mere sexual difference is a viable classification under equal protection concept. I am sure that there are specific instances when such a basis may be used, especially those relating to gonadic reasons. In the majority of instances, however, we are dealing with the application of laws to humanity generally, and humanity quite clearly is comprised of both masculine and feminine elements. I cannot believe that anyone will deny that both men and women share the common elements of humanity. No doubt there are those who would seek to polarize men and women on the basis of sex differentiation alone, and to whom maleness would represent crude masculinity and femaleness fainting femininity. These examples, however, are not in my judgment truly representative of healthy men and women. The fully developed individual integrates such gross sexual attributes of personality within himself or herself. The truly mature male or female reflects the androgynous nature of humanity; he or she is, for example, at the same time strong and gentle, aggressive and passive, firm and compassionate. In short, each is composed of a wholesome synthesis of the elements of personality which perhaps we have been too prone to oversimplify and relegate to categories labeled male or female. In stating the similarity in which men and women share humanity, I do not, however, imply that there is only one sex, accidentally differentiated because of physical composition. I refer to the similarities as a signal for caution for those of us who would look no further than genital difference as a general support for classification on the basis of sex as being valid under law.
In any event, as I have noted above, there has been no factual showing before me (and I am sure there cannot be) *83 which can support the legal necessity for the ordinance here under consideration. It seems apparent that the regulatory authority concerned here can deal effectively with any problem which may arise because of the existence of bars serving both men and women through existent general regulations which do not impair the rights of women to patronize licensed premises. One Eleven Wines & Liquors, Inc. v. Division of Alcoholic Control, supra. I determine that insofar as the ordinance here under review prohibits females from being served at public bars, it contravenes the Constitution of this State and the New Jersey Civil Rights Act, specifically the provisions thereof quoted above. Judgment accordingly.
No costs to any party.