140 N.J. Super. 544 (1976)
357 A.2d 25
RICHARD S. TOUMA, PLAINTIFF,
v.
SUSAN PATRICIA TOUMA, DEFENDANT.
Superior Court of New Jersey, Chancery Division (Matrimonial).
Decided March 26, 1976.
*546 Messrs. Jay W. Greenstone and Leon J. Sokol for plaintiff (Mr. Sokol appearing).
Messrs. Leo B. Mazer and Arthur J. Lesemann for defendant (Mr. Mazer appearing).
Mr. Bernard L. Albert appearing for Mr. Joel Becker.
*547 LUCCHI, J.C.C., Temporarily Assigned.
In this matrimonial proceeding Joel Becker who practices marriage counseling pursuant to N.J.S.A. 45:8B-6(a)(3), moves to quash a subpoena. The parties to this action individually sought counseling from the movant. Thereafter plaintiff husband subpoenaed Becker, whose testimony is sought on the issue of custody, to submit to depositions upon oral examination and to testify at the time of trial.
Plaintiff filed for divorce on the ground of adultery and his wife counterclaimed for divorce based on extreme cruelty. Defendant later withdrew her defense to the adultery count. Both parties seek custody of the four infant children of the marriage.
Becker treated the wife for one year to the present, and he treated the husband for approximately seven months from February to October 1975. The parties entered into a consent order on January 28, 1976 whereby they waived whatever privilege they had by reason of their relationship with Becker. Becker did not appear at the depositions and now moves to quash the subpoena on two grounds.
He first contends that his testimony would serve no purpose since he neither met the children nor considered the parties' fitness as parents. However, testimony by the court-appointed psychiatrist stressed the need for a professional evaluation based on extensive interviews with the parties, to determine the best interest of the children. This court, therefore, will ascertain the usefulness of Becker's testimony at the time of trial.
The second ground presented is the privilege available to marriage counselors.
The principle issue to which this court addresses itself is whether Becker can avail himself of the marriage counselor privilege stated in N.J.S.A. 45:8B-29. It is plaintiff's position that Becker never provided marriage counseling, but rather acted as a psychologist. To support his contention he points to the fact that Becker never brought *548 the two parties together during consultation. Becker maintains that the services he provided were solely those of a marriage counselor. Although he is not a licensed marriage counselor, he can engage in counseling because he is under the direct supervision of Dr. Thomas C. McGinnis, Ed.D., a marriage counselor licensed by the State of New Jersey.
After reading the affidavits submitted by plaintiff and Becker, the court concludes that Becker did act as a marriage counselor within the statutory meaning.
The practice of marriage counseling is defined in N.J.S.A. 45:8B-2 as:
The rendering of professional marriage counseling services to individuals and marital pairs, singly or in groups, whether in the general public or in organizations, either public or private, for a fee, monetary or otherwise. "Marriage Counseling" is a specialized field of counseling which centers largely upon the relationship between husband and wife. It also includes premarital counseling, pre- and post-divorce counseling, and family counseling which emphasizes the spousal relationship as a key to successful family living. The practice of marriage counseling consists of the application of principles, methods and techniques of counseling and psychotherapy for the purpose of resolving psychological conflict, modifying perception and behavior, altering old attitudes and establishing new ones in the area of marriage and family life. In its concern with the antecedent of marriage, with the vicissitudes of marriage, and with the consequences of the failure of marriage, marriage counseling keeps in sight its objective of enabling marital partners and their children to achieve the optimal adjustment consistent with their welfare as individuals, as members of a family, and as citizens in society.
Bringing the parties together is not a prerequisite for marriage counseling. The statutory definition includes services to both "individuals and marital pairs." In his affidavit Becker reveals that his work with the parties explored their perceptions of their marriage and its deterioration, their respective emotional states, and their expectations in the roles of husband and wife. The concern of the marriage counselor is not the individual singly, but the marital relationship and the people affected by it. Had Becker engaged *549 in psychological therapy with the parties, he would have worked with them with respect to personality characteristics. Although there may be overlapping between psychologist and marriage counselor, the two are not the same. While psychological therapy is concerned with the individual, resolution of all the individual's problems is not a precondition to a functioning marital relation.
Had the court found that Becker performed the services of a psychologist and not marriage counselor. Becker could not claim any privilege. The psychologist privilege, N.J.S.A. 45:14B-28, applies to licensed practicing psychologists alone. The court, however, concluded that Mr. Becker's services were those of a marriage counselor.
Any privilege extended to communications between either party and the marriage counselor finds its source in N.J.S.A. 45:8B-29:
"Any communication between a marriage counselor and the person or persons counseled shall be confidential and its secrecy preserved. This privilege shall not be subject to waiver, except where the marriage counselor is a party defendant to a civil, criminal or disciplinary action arising from such counseling, in which case, the waiver shall be limited to that action." [Emphasis supplied]
No legislative notes accompanied the enactment of this statute.
Only five states, including New Jersey, have adopted marriage counseling statutes. In California the marriage counselor may not claim the privilege if "otherwise instructed by a person authorized to permit disclosure." California Evidence Code § 1014. The Nevada statute defines marriage counseling, but is silent on the question of privilege. Michigan and Utah enacted marriage counseling acts with the relevant passages identical to that of the New Jersey act. However, no case law explaining the statutory intent exists in this area, with the exception of Wichansky v. Wichansky, 126 N.J. Super. 156 (Ch. Div. 1973).
*550 In Wichansky the husband sought to compel the marriage counselor's testimony where the wife was not willing to waive her privilege. The court therefore ruled that the marriage counselor could not be required to testify. In the instant case, however, the husband and wife entered a consent order whereby they voluntarily waived their privilege.
It is, therefore, encumbent upon this court to interpret the meaning of the phrase, "this privilege shall not be subject to waiver." Two interpretations are possible. The first alternative, whereby neither client nor marriage counselor can waive the privilege unless the marriage counselor is a party defendant, seems unlikely.
The policy behind all privileges protecting confidential communications from disclosure is one of encouraging "persons needing professional advice to disclose freely the facts in reference to which they seek advice, without fear that such facts will be made public to their disgrace or detriment." Hurlburt v. Hurlburt, 128 N.Y. 420, 28 N.E. 651 (Ct. App. 1891). Patients, clients and persons counseled belong to that class of persons for whom the privilege was enacted. The privilege seeks to promote freedom of consultation on the part of the client, not the marriage counselor.
Discussion of a psychotherapist-patient privilege in 44 A.L.R.3d 24 lends credence to this position:
Such restriction on the right to assert the privilege apparently indicates the legislatures' and the courts' attempts to balance the affirmative aspect of the nondisclosure of psychotherapist-patient communications with the negative aspect of such nondisclosure, since the privilege may only be asserted in the patient's interests and usually cannot be asserted against a patient who desires disclosure of such communications. Otherwise, information possibly relevant to the resolution of the pending litigation could be suppressed with no exonerating benefit to the psychotherapist-patient relationship.
Furthermore, the tendency at present is not to extend the classes to whom the privilege is granted, but to restrict that class. Efforts to induce the courts to create privilege in favor of additional classes have met with failure. In their *551 report on the improvement of the law of evidence in 1937-38, the American Bar Association's Committee addressed the question of novel privileges.
Of recent years, there have appeared on the statute book of several Legislatures certain novel privileges of secrecy. Their history has not been traced; but they bear the marks of having been enacted at the instances of certain occupational organizations of semi-national scope. The demand for these privileges seems to have been due, in part to a pride in their organization and a desire to give it some mark of professional status, and in part to the invocation of a false analogy to the long-established privileges for certain professional communications.
The analogies are not convincing (though this is not the place for a demonstration). Moreover, the tendency is an unwholesome one. Yet it threatens to spread not only to other Legislatures but to other occupations. The correct tendency would rather be to cut down the scope of the existing privileges, instead of to create any new ones.
And Wigmore, Evidence (McNaughton rev.) § 2286, notes that
Significantly, both the Model Code of Evidence, adopted in 1942 by the American Law Institute, and the Uniform Rules of Evidence, approved in 1953 by the National Conference on Uniform State Laws, excluded all of the so-called novel privileges.
This court therefore holds that where both husband and wife voluntarily consent to the waiver, the marriage counselor cannot claim an independent privilege for himself.
Parenthetically, we might add that were the court to allow the marriage counselor to assert the privilege, the statute would be constitutionally infirm and invalid as a violation of the 14th Amendment. By according the marriage counselor the right to withhold testimony, the statute would deprive litigants of their proprietary right to information. Moreover, the statute would hamper the parties seeking to produce relevant, competent evidence at trial, in violation of procedural due process.
The second alternative interpretation  that the marriage counselor does not have an independent right to assert the *552 privilege  is that to which the court subscribes. In drafting N.J.S.A. 45:8B-29 the Legislature sought to distinguish privileged communications between marriage counselor and person counseled from those between psychologist and patient. The Legislature placed confidential communications between a licensed psychologist and his patient on the same basis as those between attorney and client. As a result, the question arises whether the exception stated in Evid. R. 26(2) is carried over to the psychologist-patient privilege. That exception states:
Where 2 or more persons have employed a lawyer to act for them in common, none of them can assert such privilege as against the others as to communications with respect to that matter.
Since the statute does not shed any light on this question, the possibility does exist that if two or more persons consult a psychologist in regard to a matter of common interest to them, nothing that is said by the parties or the psychologist is deemed confidential in subsequent actions between the parties.
The marriage counselor privilege deems all communications between marriage counselor and the person or persons counseled confidential. Compare Evid. R. 26 (lawyer-client privilege), N.J.S.A. 45:14B-28 (psychologist privilege), N.J.S.A. 2A:84A-22.1 et seq. (patient and physician privilege), and Evid R. 28 (marital communication privilege), all of which confer a privilege against the disclosure of confidential communications, but none of which makes all communications between their participants confidential. Why, then, do we distinguish the marriage counseling setting?
A confidential communication is defined as a statement made under circumstances showing that the speaker intended the statement only for the ears of the person addressed. Thus, if the communication is made in the presence of a third person whose presence is not reasonably necessary for the communication, the privilege does not attach.
*553 Due to the nature of marriage counseling, where two people often must seek advice together, the legislature did not extend the attorney-client privilege, but spread a cloak of confidentiality over all communications between the marriage counselor and person or persons counselled, whether individually or in marital pairs. It is the unique relationship between the two clients, and not that between marriage counselor and client, that the legislature sought to protect. In all situations where the privilege exists to induce freedom of disclosure, the issue often presented is whether the presence of the third party results in waiver. Rarely does the court address the question of whether the doctor, attorney or psychologist holds the privilege. The historical background always suggests that they do not.
Since marriage counseling often brings the two spouses together for therapy, the fact that client and counselor are in the presence of a third party  here the marital partner  does not waive the privilege. Thus the meaning of the elliptical phrase, "This privilege shall not be subject to waiver," is revealed. Not only the marriage counselor, but neither husband nor wife, can testify as to what was said without the other spouse's authorization. By allowing both husband and wife to assert the privilege against any of the others present, the legislature sought to safeguard against the Wichansky situation, where the husband attempted to compel the marriage counselor to testify against the wife's wishes. Likewise, where the marriage counselor is called upon to testify, he cannot do so without the permission of every privilege-claimant. But should the converse hold, where the marriage counselor does not wish to testify and both claimants waive the privilege, the marriage counselor must acquiesce.
Two further reasons are advanced for differentiating the privileges accorded marriage counselor, psychologist and psychiatrist. Where the party introduces his mental condition in support of his claim or defense, the physician-patient privilege *554 is automatically waived. When a person consults a marriage counselor, the likelihood exists that one's mental condition will be litigated. Therefore, the marriage counselor statute stresses that the counselor is not authorized to disclose any information should the mental condition of the party counseled become an issue during litigation.
Unlike the physician and marriage counselor privileges, the psychologist-patient privilege becomes operative only when the party engages the psychologist's services in the course of pretrial preparation. The psychologist acts as the client's interpreter to the attorney. Thus, the psychologist-patient privilege is coextensive with the attorney-client privilege. Where the party consults a marriage counselor prior to the commencement of proceedings, however, the privilege immediately attaches. A comparison of couples who do and do not seek marriage counseling suggests that the possibility of future litigation is greater among the former group. Thus the Legislature extended a broader privilege to the marriage counselor to encourage individuals to seek counseling, without fear of future detriment or disadvantage.
In withholding the privilege from the marriage counselor the court weighed the opposing values of effective therapy and availability of evidence. Advocates of a marriage counselor's privilege contend that in making these confidential communications available for litigation purposes we will undermine the effectiveness of therapy. The court would side with such a position if one spouse alone could waive the privilege and compel the marriage counselor to testify. One party would then be at the mercy of the other. This risk can be circumvented where a psychologist or psychiatrist is involved by forbidding the other spouse to be present during therapy. In consulting a marriage counselor, however, one spouse cannot always bar the other's presence for efficacious treatment to result. Thus, the Legislature foreclosed any doubts as to the possibility of waiver by one litigant alone, *555 by distinguishing the confidentiality of communications to the marriage counselor from those to the psychologist.
The motion of Becker to quash the subpoena is denied.