143 N.J. Super. 504 (1976)
363 A.2d 923
STATE OF NEW JERSEY, PLAINTIFF,
v.
THOMAS ROMA, DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal).
Decided May 25, 1976.
*505 Messrs. Shanley & Fisher, attorneys for Roland Reed, Ph.D. (Mr. Richard A. Levao appearing).
Messrs. Farber, Hughes & Krause, attorneys for defendant (Mr. John J. Hughes appearing).
Messrs. McElroy, Connell, Foley & Geiser, attorneys for the American Association of Marriage and Family Counsellors *506 and the New Jersey Association of Marriage and Family Counsellors, amicus curiae (Mr. Kevin J. Coakley appearing).
Mr. James T. O'Halloran, Hudson County Prosecutor, for the State of New Jersey, (Mr. William T. Petrina, Assistant Prosecutor, appearing).
YOUNG, J.C.C., Temporarily Assigned.
This opinion supplements the opinion reported at 140 N.J. Super. 582 (Law Div. 1976), setting forth the reasons for denial of the motion of Roland Reed, Ph.D., marriage counselor, to quash subpoena, served upon him. Dr. Reed's application for reargument was granted, at which time the American Association of Marriage and Family Counsellors and the New Jersey Association of Marriage and Family Counsellors were granted leave to intervene as amicus curiae. Reargument was directed to the issue of the constitutionality of the statute which conferred a privilege to marriage counselors, N.J.S.A. 45:8B-29, as the provisions of that statute were applicable to the circumstances of this criminal proceeding.
A recapitulation of the procedural context of the hearing on reargument will serve to preface an analysis of the contentions argued. In advance of a hearing (mandated by N.J.S.A. 2A:162-2) into defendant's competency to stand trial, Dr. Reed moved to quash a subpoena duces tecum served upon him by the defendant, and a subpoena ad testificandum served by the prosecutor. Dr. Reed, a licensed New Jersey marriage counselor, resisted the compulsory process, invoking the statutory privilege provided by N.J.S.A. 45:8B-29. New Jersey has adopted the privilege as a rule of evidence. Evid. R. 28A-1. In a holding expressly confined by the circumstances presented, this court refused to recognize the privilege.
This court concluded that to deny enforcement of the State's subpoena would deprive the State of due process of law and impede the administration of justice; to deny enforcement *507 of defendant's subpoena would violate both due process as well as rights under the Sixth Amendment of the Constitution of the United States.
Initially, amicus raise the equal protection aspect. The Equal Protection Clause did not form any part of the basis of the court's opinion of March 17, 1976. That constitutional principle had not been raised previously, nor does it appear to have any direct bearing on the resolution of any issues submitted.
In passing, it should be pointed out that when a fundamental constitutional interest is at stake  here the rights of the defendant derived from the Sixth and Fourteenth Amendments  the standard of review to be applied to an equal protection case is the "strict scrutiny" test rather than the "rational basis" test. Reliance by amicus upon various "economic due process" decisions as a buttress to the argument relating to the applicable standard of review is, this court suggests, misplaced.
At the rehearing the prosecutor iterated his contention that the marriage counselor does not enjoy an independent right to assert the privilege as conferred by N.J.S.A. 45: 8B-29. The prosecutor submits the opinion in Touma v. Touma, 140 N.J. Super. 544 (Ch. Div. 1976), to support his contention. Apart from noting the matrimonial forum of the case cited, some additional distinctions from the pending criminal litigation may be drawn.
Thomas Roma stands charged with the brutal slaying of his wife and infant son on August 16, 1975. In his affidavit Dr. Reed states that "During the months of March through August, 1975, I was a licensed marriage counselor and as such rendered marriage counseling to Thomas Roma, and his deceased wife, Jean Roma." At the rehearing counsel for Roma stated that defendant was discharged from a hospital in March 1975 after receiving psychiatric treatment, and that Dr. Reed commenced counseling the parties immediately thereafter, which relationship continued within days of the homicides alleged.
*508 The position of the prosecutor is that the privilege is not personal to the marriage counselor, and further, that the privilege may be waived either jointly by husband and wife, or by one spouse when the other is deceased. That position was vigorously disputed by counsel for the very professional associations which were draftsmen of the language of the statute under review.
The interpretation of the statute advanced by the prosecutor would require this court to torture its clear language and to voyage into terra incognita in a search for "legislative intent." In contrast to the State's argument, counsel for the amicus argues that the statute was intended by its draftsmen to accord the marriage counselor a privilege to be invoked by the counselor independent of the parties counseled.
There is a clear proscription of waivability which is phrased in the plain language of the enactment. That fact should foreclose any further exploration by a trial court. See Werner Machine Co., Inc. v. Zink, 6 N.J. Super. 188, 194 (App. Div. 1950). The Legislature is deemed to mean what was plainly expressed. Legislative intent controls, and the intent and enforcement by the court must be consistent with such intent and not consistent with some supposed unexpressed intent. See Walinski v. Gloucester City Mayor & Council, 25 N.J. Super. 122, 133 (Ch. Div. 1953). Moreover, a literal construction leads to a reasonable conclusion. Where there is no showing of a bizarre or anomalous result a court should not diversify the plain meaning of statutory language. See McGowan v. Metropolitan Life Ins. Co., 60 N.J.L. 198, 200 (E. & A. 1897). Statutes should be interpreted to oblige the legislative will as written and not according to some supposed unexpressed intention. See Hoffman v. Hock, 8 N.J. 397, 409 (1952).
Counsel for Dr. Reed argues that the opinion of Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), relied upon by this court in the earlier opinion, does not foreclose a state from insulating persons of a specific class from compulsory testimonial process so long *509 as the basis for that isolation is not broad and arbitrary. Counsel cites Myers v. Frye, 401 F.2d 18 (7 Cir.1968), in which the appellate court wrote:
The Sixth Amendment does not operate to prevent a state from adopting any limitations on defense evidence in criminal trials, but only prevents the adoption of broad arbitrary limitations. [at 21]
The New Jersey privilege statute under review is not only broad, insulating an entire class  marriage counselors, but the statute draws no distinction as to the nature of the litigation in which it may be invoked, be it civil, matrimonial or criminal. As this court noted in the final paragraph of the earlier opinion, the language of the statute is so unqualified as to deprive a court of options.
At the reargument counsel for Dr. Reed also raised the Fifth Amendment privilege against self-incrimination. The assertion is that the marriage counselor would expose himself to civil and criminal liability if he were compelled to testify  an allusion being made to a criminal negligence prosecution. The short answer to that apprehension is that the Fifth Amendment is not applicable to ordinary civil proceedings. The privilege protects only against the risk of formal imposition of criminal liability.
Counsel's naked assertion of a potential for a criminal prosecution of Dr. Reed, absent more, is insufficient to salvage the privilege. Such a danger must be "real and appreciable," in the words of the early case of Queen v. Boyes, 1 B. & S. 311, 330, 121 Eng. Rep. 730, 738 (K.B. 1961), in which opinion the high English court wrote:
The danger to be apprehended must be real and appreciable with reference to the ordinary operation of the law in the ordinary course of things  not a danger of an imaginary and unsubstantial character, having reference to some extraordinary and barely possible contingency, so improbable that no reasonable man would suffer it to influence his conduct.
American courts have adopted the principle and the reasoning set out in the passage quoted. See Brown v. Walker, *510 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819 (1896); Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951); Zicarelli v. New Jersey State Comm'n of Investigation, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972). On the papers before this court there is no support for a conclusion that Dr. Reed would be in peril of self-incrimination were he to testify in this proceeding.
Lastly, counsel for Dr. Reed and for the associations which have been granted amicus status candidly stated that what this court is confronted with is a "balancing test." Cashen v. Spann, 125 N.J. Super. 386 (App. Div. 1973), aff'd as modified 66 N.J. 541 (1975). That test leads into the final issue for disposition, namely, that of the materiality of the testimony of the marriage counselor in the circumstances of this criminal action. In turn, that issue will require disposition of counsel's proposal for a hearing to determine materiality.
The criteria described by the Supreme Court in Cashen v. Spann, supra, 66 N.J. at 555 include, among other things, the nature of the claims asserted, reasons for seeking disclosure, and the necessity to a party's case of the sought-for testimony. As to the first of the factors, the nature of Dr. Reed's claims has been discussed infra. The reasons why both the State and defendant Roma pursue the testimony of the marriage counselor have already been outlined, namely, so that this court may consider the defense of insanity interposed by defendant to an indictment for dual murders. The materiality of Dr. Reed's sought-after testimony was described in this court's earlier opinion as "patently relevant and material to the defense of insanity pleaded by the defendant." That determination is reaffirmed, reinforced by the colloquy between counsel for defendant Roma and the court here noted:
THE COURT: How close to the date of the incident alleged in the Indictment? What was the last previous time that Dr. Reed saw....
*511 MR. HUGHES: Your Honor, Mr. Roma could not specifically tell me and certainly we cannot get that from the Doctor yet. He said between March which was March of '75 which was his breakdown when he was released from the hospital to Dr. Reed and the time of the incident....
THE COURT: He was released from the hospital to Dr. Reed?
MR. HUGHES; Your Honor that's what initiated our subpoenas, your Honor. Between that release and the date of the incident he visited Dr. Reed almost weekly.
THE COURT: That's why I say in the Opinion, the information I had then, and you confirm it right now, on its face it's material.
It bears repeating that Dr. Reed in his affidavit before this court states that he rendered marriage counseling to Thomas Roma and Jean Roma, his wife, during the months of March through August 1975. The Indictment alleges the murders of Jean Roma and infant son John Augustine Roma on or about August 16, 1975, at the hands of defendant. In the light of the information here summarized, the court finds no need to hold a hearing to determine the materiality or relevance of the testimony sought from Dr. Reed to the issues at hand.
It seems appropriate to the court to close this opinion with the observations of a recognized authority, Dean McCormick, directed to the proliferation of professional privileges:
Unfortunately, the justifiable demands of privacy and confidence have on more than one occasion been diverted to serve the purposes of politically powerful groups seeking the convenience and prestige of a professionally-based privilege. Whether in a given situation a privilege is justified calls for a balancing of values not likely to be achieved by those interested in the result.
Whether a proliferation of privileges is an appropriate method of securing the legitimate interest of privacy and confidentiality may be questioned. Privilege paints with a broad brush. Reconciling interests in privacy and confidentiality with the needs of litigants is not readily achieved in terms of broad categories; it calls for the finer touch of the specific solution. [McCormick on Evidence, (2 ed. 1972), § 77, at 159].
The determination denying Dr. Reed's motion to quash the subpoena remains undisturbed. The prosecutor will *512 draft an appropriate form of order. The hearing on defendant's motion to determine competency is rescheduled for June 11, 1976, at 9 A.M.